Argued March 29; affirmed April 18; rehearing denied
May 16, 1933

# ROBINSON *v.* OREGON CITY SAND AND GRAVEL CO. ET AL.

(20 P. (2d) 1073)

*William L. Gosslin,* of Portland, for appellant.
*Guy L. Wallace,* of Portland, for respondents.

BAILEY, J. In 1929 and for some time prior thereto the plaintiff herein was the owner of a fifteen-acre tract of land in Clackamas county, encumbered by a $6,500 first mortgage, a second mortgage in the sum of $1,500 and other liens. On or about May 13, 1929, a decree was entered foreclosing the first mortgage; thereafter the property was sold and on June 22, 1929, the sale was confirmed.

On October 30, 1929, the plaintiff and the defendant Oregon City Sand & Gravel Company entered into a contract whereby plaintiff agreed to sell to said defendant the tract mentioned above, except about one acre thereof, and in consideration therefor said defendant agreed to clear the entire tract of all liens and to pay the plaintiff herein the sum of $2,000. Disagreement as to the carrying out of this contract developed and on April 15, 1931, this suit was instituted to have the contract rescinded, and for other relief.

The complaint refers to the ownership of said land by the plaintiff, the foreclosure of the mortgage thereon and the agreement by the defendant Oregon City Sand & Gravel Company to clear the title to the property, and further states that said defendant had paid to the plaintiff the sum of $500 and executed and delivered to her its note for the sum of $1,500, payable at the rate of $100 per month with interest; that there had been paid on account of said note the sum of $1,200 with interest; that the plaintiff, pursuant to the terms of the contract, had executed and placed in escrow a deed for land which she had agreed to sell

to said defendant; and that plaintiff had at all times been ready, able and willing to perform the terms and conditions of said contract. The complaint further avers that this defendant had refused and neglected to perform its part of the contract, had falsely represented that it was unable to perform its agreement unless extensions of time were granted and thereby had deceived the plaintiff and prevented her from exercising her right to redeem the foreclosed property within the time limited; that after the expiration of the statutory period of redemption this defendant, contrary to the conditions of the contract, had refused to satisfy and discharge the liens, encumbrances and taxes against the property, had surrendered the sheriff's certificates and received from the sheriff a deed to the property in said defendant's name; and that thereupon plaintiff had rescinded the contract and returned to the defendant the deed from it for the one-acre tract which plaintiff under the terms of the agreement was to retain.

Finally this pleading charges that plaintiff has been damaged in the sum of $10,000 by defendant Oregon City Sand & Gravel Company's action in taking over the property shortly after the execution of the contract, removing large quantities of valuable gravel therefrom, building a roadway across the land, destroying trees and committing other waste.

On October 30, 1931, the case was called for trial. Plaintiff appeared in person and by her attorney and the defendants were represented by their attorney. Several witnesses for plaintiff and the defendants were in attendance, subject to call. At that time it was suggested by counsel for the litigants that it might be possible to stipulate the facts in the case, thereby

avoiding oral testimony, and, after spending several hours in coming to an agreement on the facts, such a stipulation was entered into, signed by the plaintiff and her attorney and by the attorney for the defendants. The stipulation was thereupon presented to the court, apparently according to an understanding with the court that the cause should be decided on the stipulation and the record.

Thereafter because of misunderstanding or disagreement between plaintiff and her attorney, the latter on November 9, 1931, notified the plaintiff that he was compelled to resign from the case, and submitted his resignation as such attorney to the court, supported by affidavit to the effect that on October 30, 1931, when the case was set for trial, he had arranged with counsel for defendants for a stipulation of facts upon which the case was to be submitted; that this arrangement was explained to plaintiff and acquiesced in by her; that a preliminary draft of the stipulation, jointly prepared by attorneys for both parties, was read over to plaintiff before the noon recess; that she made corrections and additions which were embodied therein; that when the stipulation as finally agreed upon was typed he spent more than two hours next ensuing in going over the same item by item, explaining it to her to the best of his ability; that plaintiff made a few minor corrections in the final draft of the stipulation and signed the same freely and voluntarily; that he believed the stipulation contained a fair statement of the essential facts which plaintiff would be able to prove upon a trial; that after the stipulation was submitted to the court plaintiff returned to Portland and thereafter determined to repudiate the stipulation, giving as her reason therefor that it "did not comport entirely with her knowledge

of the facts and did not support the allegations of the complaint and reply to which she had sworn"; that he advised her that it would be impossible to revoke or repudiate the stipulation; and that he did not believe there was any ground for the revocation thereof, as he had endeavored to explain fully the purpose and effect of its contents prior to the time it had been signed. The affidavit goes on to state that the plaintiff refused to permit the case to be prosecuted and submitted on the stipulation, and insisted that her attorney repudiate and revoke the same; that he had taken the matter up with the attorney for the defendants in an attempt to procure a voluntary withdrawal of the stipulation; that said attorney refused to consent to such withdrawal; and that under the circumstances he could not conscientiously prosecute the case in the manner demanded by the plaintiff. The resignation was accepted by the court on or about November 25, 1931.

On November 27, 1931, the plaintiff personally filed a motion to vacate and set aside the stipulation, supporting the motion by her own affidavit in which she stated that she had at first declined to sign the stipulation but later, at the request of her attorney, had signed it although she did not fully understand the statement and was not aware that an attempt was being made by the stipulation to deprive her of the right to have the case tried on its merits; that later, after going over the statement and pleadings, it was her opinion that the same did not "harmonize" and were "contradictory"; also that the pleadings showed that material facts were entirely omitted from the stipulation and she could not subscribe to that document as being "a true statement of facts in this case nor as a basis for a just decision".

Upon the serving and filing of this motion the defendants filed the affidavit of their attorney, which, after referring to the conditions leading up to the signing of the stipulation, stated that on October 30, 1931, all the parties to the suit appeared before the court at Oregon City, at which time it was stated to the court that it was believed a stipulation of facts could be made as to what the evidence would show; that the defendants had subpoenaed a large number of witnesses at considerable expense; that at the time of making the said statement before the court the plaintiff was in the courtroom; that her attorney and himself had dictated the stipulation jointly; and that upon completion of the final draft thereof the plaintiff and her attorney read and digested the stipulation for more than two hours, and plaintiff suggested corrections and amendments to it. The affidavit continues as follows:

"That I was present after plaintiff had signed the said statement of facts and heard plaintiff's attorney inform her that said statement of facts would stand in lieu of a trial of said cause; that thereupon plaintiff seized the statement of facts which she had signed, with defendant's exhibits thereto, and started to leave the court house; that affiant finally prevailed upon her to relinquish the exhibits attached to said statement of facts and subsequently appeared before the court to explain that plaintiff refused to permit said statement of facts to be filed; that during said explanation plaintiff's attorney appeared before the court and stated that plaintiff had reconsidered her determination not to permit the filing of said statement; that she had stated to the clerk of court that she had voluntarily signed the same and desired that said statement of facts be filed; that thereupon the exhibits belonging to defendants were reattached to said statement of facts and the same filed in open court; that said statement of facts was the joint effort of plaintiff's attorney and affiant".

At the time of filing this affidavit counsel for defendants also filed a brief in support of his contention that defendants were entitled to a decree in their favor based upon the stipulation and the record. Before filing, both affidavit and brief were served on the plaintiff.

On December 7 of the same year the plaintiff, appearing for herself, filed a reply affidavit in which, after recounting what had transpired, she set out:

"Then to my surprise Mr. Brown asked me to sign the paper, and I stated I would take it home with me and see him in the morning, but on his objections, I attached my name and immediately after, I saw both him and Mr. Wallace sign and at once I felt I should withdraw the paper until I quietly and carefully considered its substance and import, and this I did, but on my attorney's statement that in that event he would withdraw as my attorney and in my confusion, thinking I might be wrong in withholding it, I returned it and to his question, I replied that I did it of my own volition. But I again assert that in putting my name to that paper I did not know or intend that it was to take the place of a trial and the allegations of my complaint and reply which were duly considered and also signed, so prove".

Nothing further was done in this proceeding until February 17, 1932, when the late Honorable Gale S. Hill, who had been assigned to Clackamas county to hear the case, filed an order denying plaintiff's motion to vacate the stipulation of facts and entered a decree dismissing plaintiff's suit and awarding defendants costs and disbursements against the plaintiff.

At the time of denying the motion to set aside the stipulation of facts the court filed a memorandum opinion, in which it was said:

"In neither of her affidavits does plaintiff point out or indicate in what respect the stipulation of facts

fails to include any fact essential to her case or does contain any fact which is not true. In no way does she challenge the facts as stipulated. She does state in her affidavit that 'in my opinion' the statement and pleadings do not harmonize. Courts can not set aside or vacate formal stipulations signed by parties under advice of competent and experienced counsel, and accepted and acted upon by the opposite party, because after submission a party may have reached another opinion. If this procedure were countenanced, there would never be an end to a lawsuit, and the established rules and practices calculated to stabilize proceedings and expedite trials would be nullified''.

The decree contains the following recitals:

''This cause having heretofore come on for trial and by agreement of counsel in open court submitted upon written stipulation of facts made and signed by plaintiff and her then attorney and by the attorney of defendants, and the court being then unadvised reserved decision herein, and the court having duly considered said facts as stipulated and the records and files herein and all and singular the law and evidence, * * * determines that the equities in this suit are with the defendants''.

On March 2, 1932, the plaintiff had received a copy of the order and the decree and wrote to the trial judge stating that she had received the same and requesting him to inform her why her motion had not been set for hearing so that it could be decided upon its merits. To this the trial judge replied that the case had been submitted to him on stipulation of facts under agreement that plaintiff had signed; and that he had received defendants' brief in due time and had held the case as long as he could, awaiting a brief from the plaintiff, but, not having received any brief or any request for an oral argument, he ''had proceeded on the original agreement of deciding the case upon written briefs''.

On April 4, 1932, the plaintiff by her attorney filed a motion to vacate the stipulation of facts and the decree thereon, which motion was supported by her own affidavit and that of her attorney. The motion stated that upon argument the plaintiff would rely upon two points, to wit: that the party who enters into a stipulation to save delay may, upon giving notice in sufficient time to prevent prejudice to the opposite party, repudiate all or any facts therein; and that the stipulation of facts had not been verified as required by § 2-1302, Oregon Code 1930.

The affidavit of plaintiff accompanying this motion is quite bulky and refers to many matters which are not germane to the allegations of the complaint. She does not, however, in this affidavit refer to any newly discovered evidence or any facts which she could not have included in the original affidavit accompanying the motion to withdraw the stipulation. She recites that she was nervous and excited at the time the stipulation was being considered; that she did not fully comprehend the meaning thereof due to her fatigue and the noise incident to a public place; that at first she had declined to sign the stipulation and had requested to be allowed to take it home and study it; that finally upon the request of her attorney and his assurance that she would lose no rights thereby she had signed the document; that after the attorney for the defendants had signed the stipulation she requested that it be returned to her, whereupon her attorney threatened to withdraw from the case unless she allowed the stipulation to stand; and that when she signed the stipulation she believed it to be a mere memorandum which would have a tendency to shorten the trial of the case but would not be placed before the court. She also says that letters written by a former attorney of hers

should not be attached to the stipulation, as the same were written without her knowledge and were obviously an offer for a compromise.

Among other reasons advanced in plaintiff's affidavit for setting aside the former decree are the following: that she did not know that the attorney who had foreclosed the mortgage on her property was in any way connected with the defendant Oregon City Sand & Gravel Company, and had been informed to the contrary by said defendant; and that had she known that fact she would not have signed the contract hereinbefore mentioned. Next she stated that the note given to her by said defendant had been assigned by her as security to an innocent third party and that she had received payment thereon merely as collection agent for said third party and therefore the receipt of that money did not constitute a waiver of breach of the contract by said defendant company or a ratification thereof. The third ground mentioned for setting aside the decree is that the president of said defendant corporation knew that time was of the essence of the contract yet had represented to plaintiff that additional time was necessary to clear the title of the property when such was not the fact and that defendant had wilfully and deliberately failed to perform the contract according to its terms.

It is next stated that the defendant Oregon City Sand & Gravel Company without plaintiff's consent and in violation and disregard of her protest had entered upon the land and removed large quantities of sand and gravel; that when plaintiff sought to stop defendant from so doing the latter had instituted a suit to enjoin her from interfering with it; that said case was still pending; and that such removal of sand and gravel was a breach of the contract between the

parties. The affiant goes on to say that this defendant had erected a gravel crusher on the land and destroyed trees thereon; that the gravel crusher by reason of its unsightliness, noise in operation and throwing of dust and dirt had destroyed the value of the one-acre tract to be retained by the plaintiff; and that she had been damaged thereby in the sum of $10,000.

Plaintiff further says in her affidavit that she was without the benefit of legal counsel from the resignation of her former attorney on or about November 25, 1931, until March 24, 1932; that the judge who heard the case had not, after denying her motion to withdraw the stipulation, given her "any advance notice of the same and/or any opportunity to correct the alleged errors and defects pointed out by the court in its memorandum opinion". She further states that she has suffered since October 30, 1931, from illness due to the shock incident to the proceedings and to the resignation of her former attorney.

The affidavit of plaintiff's attorney accompanying the motion to set aside the decree contained no additional facts except that plaintiff had filed, almost one year prior to the bringing of this suit, a similar proceeding which she had thereafter abandoned.

There are seven assignments of error, the first of which is that the court erred in overruling plaintiff's motion to vacate the stipulation, on the ground that the motion had not been set for hearing and plaintiff had no notice of the court's intended action nor opportunity to be heard; second, that the court erred in entering a decree immediately after denying plaintiff's motion to vacate the stipulation, for the reason that the decree was entered without giving the plaintiff an opportunity to be heard and without notice of the court's intended action; third, that the decree entered is

against the law and not in conformance with the record and that at the time it was entered there were no facts or evidence on which it could be based; fourth, that at the time of entering the decree the stipulation had been repudiated and withdrawn; fifth, that from error apparent on the face of the record the court was without power or authority to enter a decree and that said decree is against the facts and the evidence; sixth and seventh, that the court erred in refusing to set aside the former decree and in affirming the decree of February 17, 1932.

One of the principal reasons advanced for reversal, upon this appeal, is the failure of the trial court to give notice to plaintiff of a hearing on her motion to withdraw the stipulation which had been signed by the litigants. It is apparent from the court's decree, from the affidavits of the attorneys herein and from the attendant circumstances in this matter that the cause originally was submitted to the court upon the statement of facts signed by the parties and in addition thereto the files and records in the case. The parties to the litigation had appeared at Oregon City with their witnesses on the day set for trial. What then occurred has already been recited. Nowhere does there appear any suggestion that the trial of the case was postponed or that the litigants were expected to return to Oregon City later for the purpose of introducing further testimony. Had there been a postponement of the trial there would have been no necessity to remain at Oregon City to prepare the stipulation covering only part of the facts.

The judge who originally had been assigned to hear the case and who signed the first decree, undoubtedly, from all the facts, was at least under the impression that the matter had been submitted to him and that

· briefs would be filed by counsel for the litigants. Then because of disagreement the plaintiff's attorney resigned and she sought to àct as her own attorney but failed to file a brief, or to do anything except to ask that the stipulation be withdrawn. The court, after waiting several months, rendered its decision and filed the decree.

In the complaint it is not contended that the original contract was not openly and fairly entered into or that it did not evidence the agreement of the parties. The only question, therefore, was whether or not the action of the defendant Oregon City Sand & Gravel Company thereafter provided sufficient reason for rescinding the contract.

No sufficient reason was stated in the affidavits filed by plaintiff prior to the original decree to warrant the court in setting aside and vacating the stipulation of facts. If the stipulation was false or untrue as to facts stated, or did not contain all the facts, then it became the duty of the plaintiff, if she desired to withdraw the same, to show in what particulars the stipulation was erroneous or deficient. It was incumbent upon her to point out specific misstatements or omissions.

Regardless of whether or not the facts set forth in said affidavits were sufficient to justify the court in granting permission to withdraw the stipulation, plaintiff nevertheless contends that she was entitled to have the matter set down for hearing and to be heard. In support of this claim several authorities are cited, the first of which is the case of *Atchison, T. & S. F. R. Co. v. Consolidated Cattle Co.*, 59 Kan. 111 (52 P. 71), in which it appears that the defendant moved for a judgment in its favor on special findings notwithstanding the general verdict. When the motions were called

counsel for defendant asked to be heard and was refused. The Supreme Court of Kansas, in passing upon this matter, said that the parties to a cause had an absolute right to be heard not only on the trial of the issues but also on the motions addressed to the merits of the controversy and that no court was warranted in assuming that it fully understood the merits of the cause until it had heard the parties thereto. The opinion continues:

"Possibly it might be held that the error in refusing to hear an argument on the motion for judgment on the special findings is not sufficient to warrant a reversal of the judgment, when this court is satisfied that the cause was correctly decided by the trial court. But the motion for a new trial involved, not merely the rulings of the court during the progress of the trial, the instructions to the jury, and other questions of law affecting the result, but also the merits of the whole case on the testimony. It was incumbent on the trial court to review the whole case, and to pass his judgment on the justice of the verdict. This court, it has been said in numberless cases, can never be in as favorable a position to weigh conflicting testimony and determine questions of fact from oral evidence as the trial court. On a motion for a new trial the attention of the court is for the first time challenged to the questions of fact in the case. It is at the same time challenged to all matters involved in its final determination. We can not give any sanction to the denial to a party of all opportunity to be heard on a matter of such importance".

Several cases from the Supreme Court of Massachusetts are cited also, among which are *Norcross v. Haskell*, 251 Mass. 30 (146 N. E. 239); *Savage v. Welch*, 246 Mass. 170 (140 N. E. 787), and *Parker v. Lewis J. Bird Co.*, 221 Mass. 422 (109 N. E. 368). These cases, however, are based upon rules of the court which were construed by the appellate court as affording the litigants an opportunity to be heard on the character

of the motions therein involved. The decisions there, moreover, have no bearing on the matter now before us, as there does not appear to be involved in this case any rule of the court or any statute similar to the rules there under consideration.

Counsel for plaintiff admits that notice of a motion is not necessary unless required by statute, and cites in support thereof section 7-303, Oregon Code 1930, which provides that: "Notice of a motion is not necessary except when this code requires it, or when directed by the court or judge in pursuance thereof".

Had plaintiff's motion for permission to withdraw the stipulation been presented orally, the argument thereon, so far as the facts in the case are concerned, would have been limited to the pleadings, stipulation of facts and the affidavits then on file. In that respect this case differs materially, as to the facts, from *Atchison, T. & S. F. R. Co. v. Consolidated Cattle Co.*, supra. We have carefully considered plaintiff's arguments on appeal relative to this matter and concur in the memorandum opinion of the trial court rendered at the time the motion was denied. In fact, we could not, in view of the record, decide otherwise. In 25 R. C. L., page 1100, it is said:

"Courts have frequently granted such relief in the case of stipulations which the parties have entered into improvidently, mistakenly, or as a result of fraudulent inducements, especially if the enforcement thereof would work injustice. The making of stipulations, however, tending to expedite the trial should be encouraged rather than discouraged by the courts, and enforced unless good cause is shown to the contrary. Parties will not be relieved from such stipulations in the absence of a clear showing that the fact or facts stipulated are untrue, and then only when the application for such relief is seasonably made, and good cause is shown for the granting of such relief".

■ Regardless of whether or not the trial court erred in not setting plaintiff's motion for hearing, plaintiff was afforded an opportunity to present any argument she desired, on her subsequent application to have the decree set aside. The second motion was denied after the court had given the matter thorough consideration.

■ Although counsel for plaintiff contends that the stipulation of facts should not have been considered, nevertheless he relies upon it in support of several of his assertions concerning what he claims to be the facts in the case. In his endeavor to upset the decree of the court he states that there was no evidence as to the amount of the defendant Oregon City Sand & Gravel Company's counterclaim, and refers to the failure of the court to render judgment in favor of the plaintiff for the sum of $300, which amount was admitted to be the balance due her on the original contract, subject to any counterclaim of the defendants. "How," he inquires, "can we account for the court's failure to give judgment for plaintiff in that sum?" Plaintiff was seeking to avoid the contract, not to enforce it, and there was no request that a decree be entered in her favor for the unpaid balance of the purchase price if she should be unsuccessful in having the contract set aside.

We have given to this case a great deal of time and consideration and are fully convinced that plaintiff has had every opportunity to present her grievances to the court. No undue advantage has been taken of her. The order and decree appealed from are affirmed, neither party to recover costs or disbursements in this court.

RAND, C. J., BEAN and KELLY, JJ., concur.

Mr. Justice CAMPBELL took no part in the hearing or consideration of this case.