FRED M. SAIGH, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRED M. SAIGH, JR., AND ELIZABETH SAIGH, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 50637, 50641. Filed April 26, 1956.

*Mac Asbill, Esq., Ray Eder, Esq., H. M. Stolar, Esq.,* and *James V. Heffernan, Esq.,* for the petitioners.

*William Schwerdtfeger, Esq.,* and *William V. Crosswhite, Esq.,* for the respondent.

MURDOCK, *Judge:* A stipulation of the amounts of the tax liabilities in each of the following cases, signed by counsel for the parties, was filed with this Court on February 28, 1955:

| Petitioner | Docket No. |
| --- | --- |
| Fred M. Saigh, Jr. | 50637 |
| St. Louis National Baseball Club, Inc. | 50638 |
| St. Louis National Baseball Club | 50639 |
| Victor Saigh | 50640 |
| Fred M. Saigh, Jr., and Elizabeth Saigh | 50641 |
| Rochester Red Wing Baseball Club, Inc. | 50664 |

The next step would have been for the Court to enter final decisions based upon the stipulations disposing of each of the cases, but before that was done the Commissioner of Internal Revenue advised the Court on March 1, 1955, that he was going to file motions to withdraw the stipulations. The Court delayed any further action for the time being, and the Commissioner filed motions in each case on March 15, 1955, in which he stated:

This stipulation was improvidently filed. In order that the settlement giving rise to this stipulation may be accorded further consideration and review by the respondent, it is moved that the Court enter an order directing that the stipulation be withdrawn and returned to the respondent for such action as may be necessary in the disposition of the case.

The hearing on the motions was continued several times upon request of one party or the other.

The Commissioner, on December 8, 1955, filed amendments to the motions to withdraw the stipulations, setting forth "the particulars of the grounds for withdrawing the stipulations." He stated that Commissioner Andrews, on February 24, 1955, had directed that the filing of the stipulations be withheld, but his direction was not communicated to his subordinate assigned the duty of filing the stipulations, until after they had been filed; the cases had been under the supervision and jurisdiction of the National Office of the Internal Revenue Service and had been handled jointly by the offices of the Commissioner of Internal Revenue and the Chief Counsel of the Internal Revenue Service at Washington, D. C.; and the Chief Counsel's office, as a result of Andrews's direction, was never thereafter authorized to file the stipulations, inasmuch as the general settlement authority vesting in it had been temporarily withdrawn and the stipulations therefore have no force and effect. The remaining portions of the amended motions relate to an allegedly fraudulent affidavit executed on July 9, 1954, by Fred M. Saigh, Jr., hereafter called Saigh. The affidavit referred to a $350,000 note on which Saigh was a maker.

The petitioners in each case filed, on January 19, 1956, an opposition to the amendment to the motion to withdraw the stipulation,

denying many of the allegations contained in the amended motion to withdraw. All of the petitioners, except the Saighs at Docket No. 50641, on that same day filed supplemental oppositions to the withdrawal of the stipulations, the purport of which is stated in the three following paragraphs.

Saigh, at Docket No. 50637, states that the amounts of the deficiencies and additions set forth in the stipulation filed at that docket number are in the same amounts as determined by the Commissioner, and he asks for a decision in accordance with the stipulation.

The St. Louis National Baseball Clubs, at Docket Nos. 50638 and 50639, state that the truth or falsity of the affidavit could affect their cases only on the question of whether or not they are entitled to deductions for interest on the $350,000 note referred to in the affidavit; since a large amount of money is being withheld from them under an escrow agreement, each is extremely anxious to put an end to this controversy and to terminate the escrow agreement; and each "is willing to amend said settlement agreement to conform to respondent's assertion in connection therewith by recomputing its taxes to disallow as an interest deduction interest paid on the note." Each asks either for a decision in accordance with the stipulation or for an order directing the parties to recompute the tax liability by elimination of the interest deductions allowed in arriving at the amounts set forth in the stipulations.

Victor Saigh and Rochester Red Wing Baseball Club, Inc., at Docket Nos. 50640 and 50664, state that the affidavit neither relates to nor affects their cases and they pray for a decision in accordance with the stipulations, since the Commissioner stated no ground for withdrawal thereof.

There were at least two conferences in which counsel for all parties and the Chief Judge of the Tax Court participated. The hearing on all of the motions to withdraw, consolidated for all related purposes, took place on February 23, 1956, at which time counsel for all parties were heard and thereafter briefs were filed.

The Court, at the beginning of the hearing on the motions to withdraw the stipulations, questioned counsel in regard to the matters set forth in the supplemental opposition statements, and counsel for the Commissioner agreed that his motions could be denied and decisions entered by the Court in accordance with the stipulations filed in the cases of Victor Saigh, Rochester Red Wing Baseball Club, Inc., and St. Louis National Baseball Club, Docket Nos. 50640, 50664, and 50639. It was also understood that counsel in the case of St. Louis National Baseball Club, Inc., Docket No. 50638, would consider entering into a further stipulation in which the tax liabilities would be recomputed in accordance with the original stipulation except that

interest deductions on the $350,000 note would be disallowed. They have since filed such a stipulation in that case. Decisions were entered on March 21, 1956, in accordance with the stipulations filed in all cases except those involving Saigh, Docket Nos. 50637 and 50641.

The discussion between the Court and counsel at the hearing on February 23, 1956, brought out the fact that the truth or falsity of Saigh's affidavit had no bearing upon his tax liabilities in Docket No. 50637, in which case all figures stipulated are identical with those determined by the Commissioner in his notice of deficiency. It relates to the years 1944 through 1947. The allegedly false affidavit had been advanced in the conferences as the Commissioner's reason for desiring to withdraw the stipulations and he agreed at the hearing to abide by the other stipulations not affected by the affidavit. The Court inquired why, under such circumstances, a decision should not be entered in accordance with the stipulation at Docket No. 50637 also. Counsel for the Commissioner stated that the Commissioner would seek increased deficiencies in that case for reasons not connected with the affidavit, if the Court permitted withdrawal of the stipulation.

The parties, at the hearing on February 23, 1956, filed a stipulation of certain facts relating to portions of the motions other than those pertaining to the affidavit. There had been activity in the Internal Revenue Service beginning December 23, 1954, in regard to the tax returns of an individual, unnamed but not a petitioner herein, whose financial transactions encompassed to some extent the matters involved in these cases. All six of the cases mentioned herein had been set for trial in St. Louis, Missouri, on January 17, 1955, but the hearing on the merits was continued on motion at that time because of the settlements then imminent. The parties had been negotiating settlements and the stipulations of settlement, which had been signed previously by H. M. Stolar, counsel for the petitioners, were signed "R. P. Hertzog, Chief Counsel, Internal Revenue Service" and initialed "D. L. B." by Douglas L. Barnes, Regional Counsel, Omaha, Nebraska, on January 18, 1955. A letter from the Washington office to Regional Counsel, Omaha, Nebraska, dated January 14, 1955, requested that the files in the present cases be forwarded to Washington, but the Regional Counsel, Omaha, and the Head, Appeals Division, in Washington, meanwhile agreed by telephone that the proposed settlements should be processed and the stipulations and the files should then be sent to Washington. That was done on January 19, 1955, with a letter stating that the stipulations were *"to be filed with the Court* now or after discussion with the Inspection Service, or at such time as you deem advisable." An assistant commissioner advised

an assistant chief counsel on January 27, 1955, that Commissioner Andrews desired an investigation of the instant cases. An assistant commissioner discussed the whole subject with Andrews on February 24, 1955, at which time the latter stated "that he desired to withhold, if possible as a procedural matter, the filing of said settlement stipulations." That advice was conveyed to the Acting Chief Counsel orally on that same day and in writing on the following day. The Acting Chief Counsel sent a memorandum on February 28, 1955, to the Head, Appeals Division, Chief Counsel's office "directing that further action on these cases in the Tax Court be suspended, if possible." The files in the cases were returned on February 28, 1955, by the Inspection Service to the Head, Appeals Division. Thereafter the stipulations were "processed in the Appeals Division, Chief Counsel's office in accordance with established procedures for stipulations generally," and the stipulations were forwarded to the Clerk of the Tax Court and filed on February 28, 1955, prior to the receipt by the Head, Appeals Division, of the aforesaid memorandum of the Acting Chief Counsel. That memorandum came to his attention on the following day.

Counsel for the Commissioner argues that he should be allowed to withdraw the stipulation in Docket No. 50637 so that he can make claim for increased deficiencies for 1946 and 1947. The Commissioner did not state in his motions that he desired to claim increased deficiencies but otherwise there would be no point to his motions. He alleged that the actual filing of the six stipulations on February 28, 1955, was without authority and was improvident in the two Saigh cases in view of the further investigation then being made, which was unknown to those who signed and filed them. Counsel for the Commissioner said in argument that increased deficiencies will be sought "based upon facts developed since then, and upon reweighing and re-evaluating facts which were known prior to the time that the stipulations were entered into." He says, in regard to his proposed claim for a larger deficiency for 1946:

Saigh through the guise of the Investment Realty Corporation, a company which did no business and had no substance for tax purposes, acquired control and part ownership, in effect, of the stock of Railway Exchange Building, Inc., by using the available earnings and profits of the latter corporation to purchase its shares. Such use of the available earnings and profits constituted dividends to Saigh and his associates. * * *

This contention is wholly without merit, in view of the Commissioner's statement in his answer in this case that he determined Saigh's true net income for the years 1944, 1945, and *1946* "On the basis of an analysis of petitioner's net worth increases plus living expenses and other non-deductible expenditures." Obviously all such transactions

as the one to which the Commissioner's counsel refers would be reflected in the income thus determined by the Commissioner if, in fact, they resulted in any income during the year. Furthermore, the statement attached to the notice of deficiency indicates that the Commissioner was aware prior to that time of transactions of Saigh involving the Railway Exchange Building.

Counsel for the Commissioner also said in regard to proposed larger deficiencies for 1947 (Docket No. 50637) and 1948 (Docket No. 50641) :

In those years Saigh through the guise of National Sports, Inc., another corporation which did no business and had no substance for tax purposes, acquired partial control and ownership, in effect, of the stock of the St. Louis National Baseball Club by using the available earnings and profits of the latter corporation to purchase its shares. Such use of the available earnings and profits constituted dividends to Saigh and his associate. * * *

It does not appear that those negotiating the settlements for the Commissioner were unaware of that transaction but, on the contrary, his counsel states that constructive dividends from National Sports, Inc., were included in Saigh's income in determining deficiencies involved in Docket No. 50641 and the answer there contains allegations that that corporation transferred assets to Saigh. Obviously Saigh's transactions with that corporation were known and considered in reaching the settlement agreements.

The law is well established that a court has some power to set aside a settlement stipulation filed with it but its discretion will not be exercised unless good cause is shown. A stipulation could be rendered inequitable by the development of a new situation (*Illinois Steel Co.* v. *Warras*, 141 Wis. 119, 123 N. W. 656), but the two transactions referred to by counsel do not come within that rule. The grounds alleged in the motions to justify abrogation of the stipulation at Docket No. 50637 are two only, one that authority to file it had been withdrawn temporarily before it was filed and the other that it was "improvident"[1] in view of the investigation then being conducted. The facts do not support either contention as a proper ground for withdrawing this particular stipulation.

Commissioner Andrews's direction to "withhold" was not absolute and, whatever his intention was, it was not carried out to prevent the actual filing of the six settlement stipulations. There was no lack of authority any place along the line in connection with the negotiation, signing, or filing of these stipulations. Those who acted for the Commissioner had full authority to do so, as is shown in the facts stipulated. The person who was responsible for filing them had been given

---

[1] This indefinite word requires facts to justify its use as sufficient ground for withdrawal of a stipulation. Mere differences of opinion, second. guessing, or hindsight in appraising the quality of the judgment exercised in reaching the settlement are not such grounds.

adequate authority and retained it, at least until after the filing when he first received the instruction not to file them. 1 Story, Law of Agency sec. 627, p. 448 (2d ed.).

Furthermore, there would be no point in withdrawing either stipulation unless it is faulty in some significant respect or will effect an unjust result. A settlement stipulation is usually a compromise, and the mere fact that the Commissioner now feels more confident about some point or points that he did not insist upon in first determining and later stipulating these particular deficiencies is not sufficient grounds for avoiding the settlement agreement. *Robinson* v. *Oregon City Sand & Gravel Co.*, 143 Ore. 177, 184, 20 P. 2d 1073. The court, in *Illinois Steel Co.* v. *Warras, supra*, at pages 124–125, stated the rule that a settlement stipulation is in all essential characteristics a mutual contract by which each party grants to the other a concession of some rights as a consideration for those secured and the settlement stipulation is entitled to all of the sanctity of any other contract. This stipulation was entered into fairly and freely by both parties and was entirely in accord with their intentions. It has not been shown that the representatives of the Commissioner made any mistake or were unaware of the points which the Commissioner now wishes to press. They were not moved by any improper inducement. Counsel for the Commissioner disclaimed in his argument that the Commissioner's representatives had been misled in Docket No. 50637 by Saigh. The stipulation related to years long past, long investigated, and long considered by the Internal Revenue Service and in connection with one of which Saigh had been sent to prison for willful evasion of his income tax. They had, or should have had, knowledge of the various transactions of Saigh relating to the tax years. The stipulation exactly duplicated the deficiencies determined in the notice of deficiency dated June 22, 1953. It does not appear that this stipulation was in any respect a pitfall for the Commissioner. The observations of another court in a similar situation are apropos insofar as any claim for an increased deficiency is concerned. *United States* v. *Town of Clarksville*, 224 F. 2d 712, 713:

The answer to this, then, is that counsel should have thought of it * * *. Both sides were represented by counsel during these negotiations; we cannot now consider Clarksville's bargain as if it had been blindly made. The stipulation was entered into fairly and freely by both parties. Accordingly, the stipulation is binding and we must enforce it. * * *

Here, as there, the stipulation "does not shock the conscience of this Court." The Commissioner seems to have lost nothing through this stipulation and has no reason to complain of it.

Careful consideration of the question, in the light of the motions, thes stipulated facts, and the arguments, leads to the conclusion that

insufficient grounds appear for granting the motion to withdraw the stipulation at Docket No. 50637.

The discussion above applies also to Docket No. 50641 except that there the Commissioner advances another argument based upon Saigh's affidavit. The case of Saigh and his wife, Docket No. 50641, stems from the Commissioner's determination as follows:

INCOME TAX

| Year | Deficiency | Penalties | | |
|---|---|---|---|---|
| | | Sec. 293 (b) | Sec. 294 (d) (1) (A) | Sec. 294 (d) (2) |
| 1948 | $60,750.78 | $30,375.39 | | $3,679.02 |
| 1949 | 22,950.55 | 11,475.28 | $2,482.50 | 1,489.50 |
| 1950 | 87,090.74 | 43,545.37 | 10,787.32 | 5,441.07 |

The parties in their stipulation agreed as follows:

| Taxable year | Deficiency | | | |
|---|---|---|---|---|
| | Tax | Penalties | | |
| | | Sec. 293 (b) | Sec. 294 (d) (1) (A) | Sec. 294 (d) (2) |
| 1948 | $44,433.48 | $22,216.74 | | $2,699.99 |
| 1949 | 10,496.64 | 5,248.32 | $1,237.12 | 742.26 |
| 1950 | 1,127.78 | 563.64 | 1,933.98 | |

Counsel for the Commissioner argues that one of the reasons for the amounts stipulated being less than those determined by the Commissioner in his notice of deficiency is that the Commissioner, in determining the deficiencies, included in Saigh's income, as a dividend, a portion of the payments which National Sports, Inc., made on account of the $350,000 note, whereas those amounts were not included in his income in the computations on which the figures in the stipulation are based. The Commissioner now contends that he erred in thus reducing the deficiencies originally determined by him, and he seeks an opportunity to reclaim a part of the deficiencies as originally determined on that ground and, for 1948, on the other ground already discussed and rejected. The question of Saigh's affidavit remains.

The Commissioner, at the hearing on his motion, offered no proof that any statement in the affidavit was untrue. He may have been influenced to some extent in that regard by remarks of the Chief Judge made earlier in the informal conferences, referred to above, at a time when the Chief Judge was not fully informed of the grounds for the motion. However, the parties were notified later that the motion was set for hearing, no limitation was imposed by the Court at any time upon the scope of the hearing or on the introduction of evidence at

that hearing, and evidence was there introduced, but the Commissioner did not choose to offer any evidence at that hearing with regard to the affidavit. Furthermore, it is now clear that the Commissioner did his case no harm by not offering evidence in regard to the affidavit.

The Commissioner was not misled by the returns for 7 years filed under oath by Saigh. Instead, as he states in his answers, he disregarded Saigh's books and records and investigated Saigh's tax liability through other sources of his own choosing. The investigation caused him to add large amounts of unreported income and to determine additions for fraud for each of the 7 years 1944 through 1950. The deficiencies determined by the Commissioner against Saigh for that period amounted to $243,758.49, and the so-called penalties, including that for fraud, determined for the same period amounted to $154,598.95, or a total of $398,357.44. The notices of deficiency were mailed on June 22, 1953. The Commissioner was well aware prior to that time that Saigh had been successfully prosecuted for a felony, willful evasion of his income taxes for a part of the period for which the deficiencies were determined, and had served time in the penitentiary as a result. He also knew that Saigh disassociated himself from the National League and ceased to have any interest in the ball club, as appears from the stipulation of facts. The affidavit in question is dated July 9, 1954. The settlement stipulations were not signed on behalf of the Commissioner until January 18, 1955, after long negotiations. Saigh's fellow stockholder in National Sports, Inc., mentioned in the affidavit, was Robert E. Hannegan, Commissioner of Internal Revenue from October 9, 1943, until June 22, 1944, and prominent politically, who died in 1949. It seems unlikely that Commissioner Andrews and his Internal Revenue Service, under the circumstances, did not investigate all relevant circumstances to their own satisfaction, but instead actually relied upon and were misled to their disadvantage by Saigh's affidavit when they entered into the stipulation at Docket No. 50641. Long observation of the work of the Internal Revenue Service inclines the Court to the belief that the Service, in agreeing to the settlement stipulations, relied upon its own thoroughly independent investigation rather than upon the 1954 affidavit of the known defrauder it was investigating. The men in that Service are surely not so naive, inexperienced, or unqualified for their tasks as to be misled at that stage by any statement of Saigh, and particularly by the affidavit in question. The Commissioner would seem to confess gross negligence and incompetence for himself and his Service were he to insist that he and those whom he had entrusted with this responsibility relied upon and were misled by such a man, whose other statements they had consistently scorned. No such admission is made in his motions to withdraw these stipulations.

Counsel for the Commissioner, in his argument on the motion, has stated that misrepresentations in the affidavit "were in part responsible for a major concession made by respondent's personnel." However, the Commissioner pointedly did not state in his motions that he relied upon the affidavit. The Court must assume that those motions were prepared with care and meticulously state the Commissioner's reasons for seeking to withdraw the stipulation. Thus it is not too clear that the Commissioner desires to admit for present purposes that he relied upon this affidavit or any other statement of Saigh or that he agreed to a lesser deficiency because of misplaced reliance upon the affidavit. Perhaps he might prefer that the reference to reliance in the argument be disregarded. However, an examination of the affidavit and the charges made against it in the motions and in the arguments, in the light of the present record, may be illuminating.

Excusable damaging reliance upon a false or untrue representation of the other party, even one innocently made, is a recognized ground for relief from a settlement stipulation. The Commissioner alleges in his motions that Saigh's affidavit was false and fraudulent and was furnished to the Internal Revenue Service by Saigh with the intent that it would be relied upon by those conducting the negotiations. One might expect his next allegation to be that it was relied upon, but there is no allegation in the motions that the representatives of the Commissioner who conducted the negotiations, who agreed to, who executed, or who filed the settlement stipulations relied upon Saigh's affidavit or that they agreed to lesser deficiencies as a result of reliance thereon than they would have agreed to otherwise.

Counsel for the petitioners state in their brief that during negotiations, which took place after the filing of the motions to withdraw the stipulations and before the hearing on those motions, they advised the Chief Counsel of the Internal Revenue Service—

that, if he honestly felt the affidavit might have misled the Internal Revenue Service, petitioners would agree to a reopening of the settlement stipulation [at Docket No. 50641] to relieve the respondent of the concession of the issue covered by the affidavit given by Mr. Saigh and to have Mr. Saigh assume the usual burden of proof resting on the taxpayer in connection with issues before the Tax Court, *provided* that no additional claims of deficiencies, having no relation to the affidavit, would be asserted.

The Chief Counsel refused to go along with this suggestion of petitioners. * * *

The petitioner alleges and the Commissioner admits at Docket No. 50639 that St. Louis National Baseball Club, the petitioner at Docket No. 50639, was merged on January 8, 1948, with National Sports, Inc., which later changed its name to St. Louis National Baseball Club, Inc., the petitioner at Docket No. 50638. Saigh stated in the affidavit in question that National Sports, Inc., was the purchaser of stock of the St. Louis National Baseball Club in November 1947; by its president,

Robert E. Hannegan, it executed a note in the amount of $350,000 to the order of Sam Breadon, a seller, as part payment for the stock; Saigh and Hannegan, principal stockholders of the purchaser, "were co-makers on said note as an accommodation to said National Sports, Inc."; the intention of all parties concerned was that the "note be a corporate obligation of National Sports, Inc., the purchaser of the shares"; and entries were erroneously made on the corporate books crediting the amount of the note to paid-in surplus but were later adjusted to show the amount as an account payable of the corporation, as soon as the principal officers learned about the credit to paid-in surplus.

It is stated in the amended motion to withdraw the stipulation that the Internal Revenue Service has reasonable grounds to believe that the affidavit is false and fraudulent. The Commissioner's first charge against the truth of the affidavit is that it falsely represents that Saigh and Hannegan were not "primary obligors on said note." There is nothing to that charge because no such representation is made. The statement in the affidavit is that those two individuals were accommodation makers of the note. Such makers are "primary obligors" and liable to a holder for value even though the holder knew them to be accommodation parties. Ogden, Negotiable Instruments, p. 252 (5th ed.); Brannan, Negotiable Instruments Law, pp. 554 *et seq.*, 587 (7th ed., Beutel); Uniform Negotiable Instruments Act, sec. 29.

Other charges are that, contrary to the statement in the affidavit, the intention of all parties was that the note should be the individual obligation of Saigh and Hannegan rather than a corporate obligation and it represented paid-in surplus of the corporation. The Commissioner wants to withdraw the stipulation in this case so that he can reassert the position which he says he took in determining the deficiencies, to wit, that the corporation paid the note, the note was the individual obligation of Saigh and Hannegan, and the payments by the corporation represented dividends to them, the principal stockholders. The Court is unable to see how such a result could be reached in view of the facts disclosed by the present record. The parties agree that National Sports, Inc., paid the note and the Commissioner has taken no exception in his motion to Saigh's statement in the affidavit that National Sports, Inc., was one of the makers of the note and the purchaser in November 1947 of stock of St. Louis National Baseball Club. The Commissioner admits in his answer at Docket No. 50639 that all of the assets of St. Louis National Baseball Club "were transferred to National Sports, Inc. (now St. Louis National Baseball Club, Inc.) in a statutory merger under the laws of the State of Missouri." The giving of the note to the seller as part payment for the stock, which note was to be and was paid by the purchaser, National

Sports, Inc., could not result in any paid-in surplus to National Sports, Inc. Nor could a dividend, constructive or otherwise, from National Sports, Inc., to Saigh and Hannegan result from the transaction. Payment of the note relieved Saigh of his obligation thereon but the corporation distributed nothing. National Sports, Inc., received consideration, the stock of St. Louis National Baseball Club, for its payments on the $350,000 note. The Commissioner could not have been misled to his damage if, in the settlement agreement, he conceded that no dividends to Saigh resulted from payment of the $350,000 by National Sports, Inc.

Here, at Docket No. 50641, as at Docket No. 50637, those acting for the Commissioner had adequate authority to do what they did; that authority was not withdrawn prior to the filing of the stipulation; and the grounds on which the Commissioner would claim larger deficiencies than those stipulated are not newly developed ones of which the Service was unaware prior to the date of the stipulation. The motions contain no allegation that the affidavit of Saigh was relied upon by the opposite party to his damage; it seems unlikely that he would have relied upon it; and the facts appearing of record, which the Court may properly accept as true for the purpose of ruling on the motion, indicate that the damage suggested by the Commissioner could not have resulted from reliance upon those challenged parts of the affidavit which might possibly be untrue. No grievous fault in the stipulation appears. Thus in neither case has the Commissioner shown any sound reason for withdrawal of the settlement stipulation.

Reviewed by the Court.

> *Decisions will be entered in accordance with*
> *the stipulations at Docket Nos. 50637 and 50641.*

WITHEY, *J.*, concurs in the result.

OPPER, *J.*, dissents.

ATKINS, *J.*, did not participate in the consideration of or decision in this report.

———

HARRON, *J.*, dissenting: It is within the Court's discretion to allow a party to withdraw a settlement stipulation, upon timely presentation of a motion requesting such action, if proper cause is shown and if the opposing party will not suffer injury or prejudice. Cf. *Brown* v. *Cohn*, 88 Wis. 627, 60 N. W. 826, 829; *Illinois Steel Co.* v. *Warras*, 141 Wis. 119, 123 N. W. 656, 658.

The respondent's motions were timely filed; petitioners do not contend otherwise. The Court had not entered decisions in accordance with the stipulations. Petitioners did not show, in my opinion, that the status quo could not be reestablished, or that they would suffer injury or prejudice if respondent's motions were granted. Cf. *Illi-*

*nois Steel Co.* v. *Warras, supra.* As I see the matter, granting the respondent's motions would reestablish the status quo of the parties as it existed before the settlement stipulations were filed here, and would leave the parties where they were, i. e., in a position to proceed to the trial of these cases on the merits.

There is the question whether the respondent has shown proper cause for withdrawing the stipulations. He now relies primarily and in substance upon the grounds (without having abandoned his contention that Saigh's affidavit was false and fraudulent) that the Commissioner directed his subordinates not to file the settlement stipulations in this Court; that the Commissioner revoked delegated authority to subordinates to make him a party to settlement stipulations in these cases; and that the stipulations were filed inadvertently, by mistake, and without authority. I believe that the respondent has proved the facts which support the contentions, and I disagree with the majority suggestion that the Commissioner's direction to "withhold" filing the settlement stipulations "was not absolute." It is undoubtedly true that the Commissioner of Internal Revenue can revoke a delegated authority even under the so-called decentralization setup of the Internal Revenue Service. Furthermore, it must be recognized that a stipulation of settlement must have the approval of the Commissioner, and no such approval existed here.

Moreover, the majority undertakes to decide, on its consideration of respondent's motions, questions which go to the merits of issues which have not been tried. In my opinion, it is error to undertake now to decide what would be the probable outcome of a trial on the merits if the present motions were granted.

Because I believe that the Court properly can and should exercise its discretion to grant respondent's motions under all of the facts and circumstances here present, I respectfully note my dissent.

BRUCE and PIERCE, *JJ.*, agree with this dissent.