T.C. Memo. 1995-590


UNITED STATES TAX COURT


ESTATE OF GOLDA E. RIXON KOKERNOT, DECEASED,
MARY ANN K. LACY, EXECUTRIX, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16088-94.          Filed December 13, 1995.


Before trial, the parties negotiated a settlement specifying the manner of resolving all issues raised in R's notice of deficiency. During discussions regarding the proposed stipulated decision document, P sought to raise an issue as to its entitlement to use the special use valuation provisions of sec. 2032A, I.R.C. This issue was not covered in R's notice of deficiency, and was not raised or preserved by P in the pleadings or the stipulated settlement agreement. Held: The issue raised by P is a new issue that is not before the Court.

Stanard T. Klinefelter, for petitioner.

Susan T. Mosley, for respondent.


MEMORANDUM OPINION

LARO, Judge:  This matter is before the Court on the
parties' cross-motions for entry of decision in accordance with a
stipulation of settlement filed July 3, 1995.  We must decide
whether the subject decision should reflect the application of
section 2032A.[1]  We hold that it should not.

We refer to Golda E. Rixon Kokernot as decedent.  At the
time of her death decedent was a resident of the State of Texas.
We refer to Mary Ann Kokernot Lacy as Executrix.  At the time
Executrix filed her petition with the Court she was also a
resident of the State of Texas.

Background

Decedent died on December 7, 1990.  At the time of her death
decedent owned a large cattle ranch located in Brewster and Jeff
Davis Counties, Texas, called the "Kokernot 06 Ranch" (Ranch).
On September 7, 1991, Mary Ann K. Lacy as the Executrix for the
estate of Golda E. Rixon Kokernot, filed the estate's Federal
estate tax return, in which Executrix reported the fair market

_____

[1] Unless otherwise stated, section references are to the
Internal Revenue Code in effect for the date of the decedent's
death, and Rule references are to the Tax Court Rules of Practice
and Procedure.

value of the Ranch as $2,696,536. Decedent's estate's tax return included a Schedule A-1 "Section 2032A Valuation," on which Executrix made a protective election pursuant to section 20.2032A-8(b), Estate Tax Regs.[2] The estate tax return was subsequently selected for audit. The principal issue on audit centered on the fair market value of the Ranch. Unable to resolve the fair market value issue at the audit level, respondent issued a notice of deficiency to Executrix on June 9, 1994. Respondent's notice makes no mention of Executrix's protective election under section 2032A and the regulations thereunder. Nor does the petition filed with this Court by the Executrix.

The case was set for the trial session in Washington, D.C., commencing on June 19, 1995. At the suggestion of the Court, the parties engaged in negotiations prior to the start of this session in an attempt to resolve the fair market value of the Ranch. During these negotiations Executrix never mentioned

---

[2] Enacted by the Tax Reform Act of 1976, Pub. L. 94-455, sec. 2003, 90 Stat. 1856, primarily to encourage the continued operation of family farms, sec. 2032A permits qualified real property to be valued for estate tax purposes by reference to its use in the farming activity, rather than at its value based on its highest and best use. Where it is not certain that property meets the requirements for special use valuation, an estate may under sec. 20.2032A-8(b), Estate Tax Regs., make a protective election to specially value qualified real property, contingent on the property values as finally determined meeting the requirements of sec. 2032A.

section 2032A, and she never mentioned that she might want to consider the application of that section once the parties finally agreed to the fair market value of the Ranch.  On June 19, 1995, when the case was called for trial, counsel for respondent announced that the parties had reached a basis for settlement on all issues raised in the notice of deficiency.  Subsequently, on July 3, 1995, the parties filed a three-page stipulation of settled issues.  The agreement contains no reference to section 2032A or to Executrix's protective election under that section. In relevant part the stipulation of settlement states:

> 3.   The parties stipulate to the following terms of settlement:
>
> a.   With respect to the increase in the value of real estate included in the gross estate, the issues were resolved as follows:
>
>> I.   The parties agree to the value of the entire 103,843 acres of the cattle ranch at $80.00 per acre.
>>
>> ii.   In addition, the parties agree that petitioner is entitled to a discount of 20% on the entire 103,843 acres to reflect the deceased's partial interest in the property.
>>
>> iii. In addition, petitioner concedes that the gifts made on January 24, 1990 under the authority of the power of attorney should be included in the gross estate for tax purposes.
>
> b.   With respect to the $18,867.00 increase in miscellaneous property due to the inclusion of ranch lease income, the petitioner concedes the issue in full, as reflected in petitioner's amended return filed

subsequent to the issuance of the statutory notice of deficiency.

c.    With respect to the issues of the disallowed claim against the estate in the amount of $500,000.00, respondent concedes petitioner is entitled to an adjustment of $500,000.00 reducing the amount of the gross estate reported on petitioner's estate tax return.  This adjustment is in lieu of the claim against the estate in the amount of $500,000.00.

d.    With respect to the increase in adjusted taxable gifts in the total amount of $21,578.00, the petitioner concedes the issue in full, as reflected in petitioner's amended return filed subsequent to the issuance of the statutory notice of deficiency.

4.    In addition, the parties agree that petitioner is entitled to deductions for additional expenses incurred in administering the property of the estate which expenses were incurred subsequent to the filing of the estate tax return.  These deductions will be allowed as verified.

The parties agree to this STIPULATION OF SETTLEMENT.

Based on the stipulation of settlement, the Court allowed the parties time to exchange information regarding additional administrative expenses, to compute the correct amount of estate tax due, and to prepare decision documents.  After reviewing the agreed upon fair market value for the Ranch, petitioner's counsel advised respondent that Executrix intended to pursue its protective election under section 20.2032A-8(b), Estate Tax Regs. Consequently, on August 26, 1995, Executrix mailed respondent an amended Federal estate tax return in which she made an election under section 2032A for the Ranch.

## Discussion

The compromise and settlement of tax cases are governed by general principles of contract law. A settlement stipulation is in essence a contract. Each party agrees to concede some rights which he or she may assert against his or her adversary as consideration for those secured in the settlement agreement. Saigh v. Commissioner, 26 T.C. 171, 177 (1956). Like contracts, stipulations of settlement bind the parties thereto to the terms thereof. Stamos v. Commissioner, 87 T.C. 1451, 1455 (1986). In determining the proper meaning of the terms, we focus on the language of the stipulation and the circumstances surrounding its execution. Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436 (1969); see also Brink v. Commissioner, 39 T.C. 602, 606 (1962), affd. 328 F.2d 662 (6th Cir. 1964). We will enforce a stipulation of settlement, whether filed or orally stipulated into the record, unless justice requires that we do otherwise. Adams v. Commissioner, 85 T.C. 359, 375 (1985); Sennett v. Commissioner, 69 T.C. 694 (1978); Saigh v. Commissioner, 26 T.C. 171, 177 (1956).

Respondent contends that the Executrix failed to preserve a claim to special use valuation under section 2032A. Respondent argues that Executrix's claim to section 2032A valuation involves

new factual issues that would require additional evidence including, perhaps, expert testimony. Respondent maintains that the settlement agreement filed with the Court on July 3, 1995, incorporates the full terms of the parties' agreement and that the agreement speaks for itself. Since the deficiency notice, the petition and other pleadings, and the settlement document are all silent with respect to the application of section 2032A, respondent contends, Executrix is not entitled to the benefits of that section and the regulations thereunder.

Executrix argues that the parties' stipulation of settlement encompasses only those issues raised in the notice of deficiency, i.e., the fair market value of the Ranch. Executrix contends that the settlement agreement covered neither the amount of the deficiency, nor its computation. Executrix maintains that the estate's use of section 2032A is a "mechanical computation", and that Executrix's election of that section's provisions is necessarily dependent on the fair market value of all of the decedent's property, as finally determined or agreed to following an examination of the return. Executrix argues that respondent's failure to consider the possible impact of Executrix's protective election during the settlement negotiations does not constitute a

valid basis to deny the benefits of that election in computing the decedent's estate tax.

We disagree with Executrix. Whether petitioner is entitled to the benefits of section 2032A requires the determination of several factual issues; consequently, the application of 2032A is not merely computational.[3] The ability of Executrix to use section 2032A raises a new issue that was not mentioned in the subject notice of deficiency, the instant pleadings, or the negotiations surrounding the settlement agreement. Indeed, Executrix acknowledges in her memorandum of law that she did not advise respondent's counsel that she (Executrix) might want to perfect her protective election under section 2032A once the parties finally reached an agreement. With this in mind, we refuse to allow Executrix to raise this issue at this time. The agreement to settle this lawsuit, voluntarily entered into, must be given binding effect. It is no answer to say that the need to follow such a course could not have been ascertained until the

_____

[3] To qualify for special-use valuation under sec. 2032A, property must satisfy a series of requirements, relating to (1) the nature of the property itself, (2) its use on the date of the decedent's death and during the immediately preceding 8-year period, (3) the relationship between the decedent and the person acquiring the property from the decedent, and (4) the fair market value of the property as compared with the fair market value of the decedent's adjusted gross estate (i.e., the 50 percent and 25 percent tests). See sec. 2032A(b).

fair market value of the Ranch was finally determined.  Executrix could have pleaded special use valuation as an alternative position in this case.  For reasons unknown to the Court, she did not do so.

In short, the settlement agreement shows that the parties agreed on the "value" of the ranch, and we believe that respondent was entitled to infer that "value" in this context meant value for estate tax purposes.  We have no doubt that respondent entered into the stipulation on that assumption, thereby forgoing the higher "value" asserted in the deficiency notice.  Executrix would have us hold that the "value" ought to be lower than in the stipulation due to the application of a special form of valuation that is not mentioned in the pleadings, in the stipulation, or in the negotiations leading to the stipulation.  We refuse to do so.  The parties struck a bargain in the stipulation, and Executrix must live with the benefits and burdens of it.  Each party bore the responsibility to negotiate a written settlement that accurately reflected that party's position.  In agreeing to the written settlement here, Executrix failed to preserve her claim to special use valuation under section 2032A.

We have considered all of Executrix's arguments and, to the extent not addressed above, have found them to be without merit. To reflect the foregoing,

An appropriate order will be issued granting respondent's motion for entry of decision and denying petitioner's cross-motion for entry of decision and decision will be entered for respondent.