ESTATE OF RALPH L. JONES, DECEASED, ZEPHA H. JONES, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Jones v. Commissioner
Docket No. 20509-82.
United States Tax Court
T.C. Memo 1984-53; 1984 Tax Ct. Memo LEXIS 622; 47 T.C.M. (CCH) 1011; T.C.M. (RIA) 84053; January 31, 1984. Quentin L. Housholder and Alan C. Housholder, for the petitioner. Vallie C. Brooks, for the respondent. SCOTT
MEMORAMDUM OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's estate tax in the amount of $285,501.09. The issue for decision is whether the parties had entered into a settlement agreement prior to June 1, 1983, which should be enforced by this Court. [1]
*623 All of the facts surrounding the negotiation of a purported settlement between the representative of petitioner (the estate of Ralph L. Jones) and an officer of the Appeals Division of respondent's office, and the proposed settlement negotiated by the Appeals officer, were stipulated by the perties. These facts show the following. Petitioner in this case is the estate of Ralph L. Jones, deceased, Zepha H. Jones, executrix. Zepha H. Jones is the widow of Ralph L. Jones, who died a resident of Sumner County, Gallatin, Tennessee, on August 22, 1978. On May 21, 1979, Mrs. Jones, as executrix, executed a United States estate tax return, Form 706, for the estate of Ralph L. Jones and the return was received by respondent's office on May 24, 1979. At the time of the filing of the petition in this case, Zepha H. Jones resided in Nashville, Tennessee. The alternate valuation date of February 22, 1979, was used in valuing the assets of the estate reported on the estate tax return. One of the assets reported on the return was a 65.5173 percent interest owned by Ralph L. Jones at the date of his death in the Cedarbrook Apartments, Ltd. (a limited partnership which had as its principal *624 asset an apartment complex known as the Cedarbrook Apartments). As a result of an examination of the estate tax liability of the estate of Ralph L. Jones (decedent), the District Director proposed certain changes in the value of the assets reported. One of the proposed changes was in the value of decedent's interest in the limited partnership which owned the Cedarbrook Apartments. Petitioner filed a protest, dated December 11, 1981, requesting that the case be referred to the Appeals Division of respondent's office. Due to the imminent expiration of the statute of limitations on assessment, petitioner was not afforded a conference in the Appeals Division prior to May 13, 1982, the date of the issuance of the statutory notice of deficiency. In the notice of deficiency dated May 13, 1982, respondent notified petitioner of a deficiency in estate tax in the amount of $285,501.09. The notice was issued by the District Director. One of the adjustments in the notice was an increase in the value of the interest owned by decedent in the partnership owned the Cedarbrook Apartments. On August 12, 1982, petitioner filed its petition with this Court, placing in issue the entire deficiency *625 determined by respondent. On October 12, 1982, respondent filed his answer to the petition. In the latter part of November 1982, the case was received by the Appeals Division of the Internal Revenue Service for consideration. On November 29, 1982, Harold L. Best, Appeals officer, wrote a letter to the attorney for the estate of Ralph L. Jones stating that it would be mutually advantageous if the issues in this case could be settled without trial and, for that reason, the case had been referred to the Appeals Division of the Internal Revenue Service. After consideration of the case by Appeals Officer Best, Internal Revenue Service Form Letter 1220 (RO)(REV. 5-82), dated March 10, 1983, signed by Mr. Best was sent to petitioner's attorney advising him that Internal Revenue Service Forms 3614-A and 886-A, which were attached to the letter, reflected a settlement which had been approved. Also attached to this letter was a document entitled "DECISION." This document, which set forth the caption of the case as it appears on the Tax Court docket, recited that-- Pursuant to agreement of the parties in the above-entitled case, it is ORDERED and DECIDED: That there is a deficiency in *626 estate tax due from the petitioner in the amount of $60,786.80. There was a line for the decision document to be signed by a judge of this Court and a stipulation at the bottom of the decision document with spaces for signing by petitioner's attorney and on behalf of the Chief Counsel of the Internal Revenue Service. The form letter dated March 10, 1983, which was sent to petitioner's attorney recited in the first paragraph the following: I have prepared a proposed stipulation-decision decument to be filed with the United States Tax Court reflecting the agreement we reached during consideration of your case. If you approve, please sign and return the original and one copy of the stipulation-decision document. Individual petitioners should sign the stipulation exactly as the names appear in the case caption. The remaining copy of the document and the copy of the statement of income tax changes (if enclosed) are for your files. * * * The letter further recited that "The settlement we reached * * * has been approved," and then stated the following: "After approval, the stipulation is forwarded to District Counsel for filing with the Tax Court. The Tax Court will *627 notify you of entry of the stipulation." On or about March 14, 1983, petitioner's counsel signed and hand delivered the decision document he received with the March 10, 1983, letter to Mr. Harold L. Best, the Appeals officer who signed the March 10 letter. On April 6, 1983, Zepha H. Jones mailed Harold L. Best a check made payable to the Internal Revenue Service in the amount of $60,786.80 with a letter which stated that this check was to pay the tax due on the estate of Ralph L. Jones, docket No. 20509-82 of the United States Tax Court. The $60,786.80 check sent to Mr. Best by Mrs. Jones was negotiated by the Internal Revenue Service District Director's office. On April 11, 1983, Harold L. Best again wrote to petitioner's attorney stating that the settlement had been approved and the stipulated decision had been forwarded to the District Counsel for filing with the United States Tax Court. On June 1, 1983, petitioner's attorney returned a call made to him on May 31, 1983, by Harold L. Best. In the conversation between Mr. Best and petitioner's attorney, Mr. Best stated that the decision document which had been signed by petitioner's attorney and delivered to Mr. Best in March *628 was not going to be executed on behalf of respondent. Mr. Best explained that there was an inaccurate statement in the protest which petitioner had filed in 1981 with respect to the mortgage on the Cedarbrook Apartments. The statement referred to by Mr. Best read: "Also in February of 1979, it was impossible to assume existing FHA mortgages." Petitioner admits that this statement is inaccurate.On reaching the settlement agreement which was the subject of the letter dated March 10, 1983, the Appeals officer relied on the above statement made in petitioner's protest in determining the value of decedent's interest in the partnership which owned the Cedarbrook Apartments and on the statement in that protest that-- Much of the value of the Cedarbrook Apartment in 1981 was attributable to the $2,200,000.00 7 percent [FHA] mortgage which could be assumed in the summer of 1981, but which could not be assumed in February of 1979. In fact, in February 1979 the Federal Housing Administration (FHA) mortgage on the Cedarbrook Apartments could be assumed by a responsible person who was acceptable to the mortgagee and the FHA. In February 1979, the FHA generally prohibited the use of second *629 mortgages, wrap-around mortgages and land contracts in connection with the sale of apartments such as Cedarbrook to profit-motivated sellers. However, the FHA did consider and allow a second mortgage on such apartments in hardship cases and cases involving extenuating circumstances. Applications to the FHA for use of second mortgages were handled on a case-by-case basis. In February 1979, the FHA did not prohibit a partner in a limited partnership owning an apartment, such as the interest decedent owned in the Cedarbrook Apartments partnership, from selling his interest in such partnership and receiving as part of the purchase price a promissory note secured by a security interest on the transferred partnership interest. It was upon being advised of the fact that an FHA mortgage could be assumed in February 1979, and of the fact that second or wrap-around mortgages would be considered on a case-by-case basis by the FHA, and that a partner in a limited partnership owning an apartment could sell his partnership interest, that Mr. Best, the Appeals officer, contacted petitioner's attorney to advise him that the decision document would not be filed with the Tax Court. Mr. Best suggested *630 to petitioner's attorney that petitioner revise the proposal of settlement to reflect an increased value of the Cedarbrook Apartments due to the assumability of the FHA mortgage. In response to this request, petitioner's counsel advised the Appeals officer that petitioner would insist upon consummation of the settlement previously agreed upon. On the estate tax return, the Cedarbrook Apartments property was stated to have a value of $2.6 million. An appraisal by R. D. Jackson and Associates showing the value of the apartments as $2.5 million was attached to petitioner's protest. This appraisal report contained the statement that "We are advised that in 1979, the type of FHA loan that was on the property was not assumable in the ordinary course of events." Petitioner takes the position that at the time Appeals Officer Best negotiated a settlement with him and at the time of the approval of that settlement, the exclusive jurisdiction to settle this case was in the Appeals officer and his superior under the provisions of 26 C.F.R. sec. 301.7701-9 (1983); 26 C.F.R. sec. 601.106 (1983); Delegation Order No. 60 (rev. 5), 1979-2 C.B. 482; *631 and Delegation Order No. 66 (rev. 10), 1980-1 C.B. 571. [2] It is petitioner's position that Appeals Officer Best settled the above-entitled case with petitioner's representative in accordance with the grant of exclusive jurisdiction to the Regional Commissioners or their delegates to settle cases pending before the United States Tax Court for a period of 4 months.Petitioner points out that under these regulations the 4-month period commences at the time the Appeals Division receives the case from the District Counsel. It is petitioner's position that under these regulations the signing of the stipulation on behalf of the Chief Counsel of the Internal Revenue Service by a properly authorized Regional or District Counsel is purely a ministerial function and has no effect on the validity of the settlement. While in our view the record here does not clearly establish the final necessary approval *632 of the proposed settlement by a delegate of the Regional Commissioner within the 4-month period from the time the case was referred to the Appeals Division, we will assume that such approval was given for purposes of this case. [2] However, in our view this assumption does not require a decision that an order for entry of decision in accordance with the decision document drafted by the Appeals officer should be entered. Petitioner relies on Gardner v. Commissioner,75 T.C. 475, 478-479 (1980), in which we stated: With respect to cases docketed in this Court, the Commissioner has delegated exclusive settlement authority to the Regional Commissioners for a period of 4 months from the time after which the case is at issue and the Appeals officials receive the case from the Chief Counsel's delegate. Internal Revenue Delegation Order No. 60 (rev. 5), 1979-2 C.B. 482. By Delegation Order No. 66 (rev. 9), 1979-2 C.B. 483 (current revision *633 at 1980-1 C.B 571), the Commissioner authorized the Chief and Associate Chief of each Appeals Office to perform the settlement functions delegated to the Regional Commissioners. See generally Rev. Proc. 79-59, 1979-2 C.B. 573; Statement of Procedural Rules sec. 601.106(a)(1), 26 C.F.R. sec. 601.106(a)(1) (1980). Appeals officers, such as Mr. McMahon, do not appear to have been delegated settlement authority, and petitioners thus cannot rely on Mr. McMahon's preliminary approval of the settlement stipulation as being binding on the Commissioner. Furthermore, we think that the Procedural Rules, fairly construed, indicate that no settlement is binding unless approved by a reviewing officer in Appeals Office or at the very least submitted to him for consideration. Rule III of the Procedural Rules, note 2 supra, contemplates that notice will be given a taxpayer if a reviewing officer disapproves of a settlement proposal recommended by an Appeals officer. Surely the rule implies that a settlement proposal must at least be submitted to the reviewing officer, and that such officer must take affirmative action in either rejecting *634 or approving the proposal before it can be taken as binding on the IRS. * * * Petitioner argues that the inference in the above quoted statement is that if the reviewing officer has approved the proposed settlement, it is binding on the Commissioner and should be enforced by the Court, whether or not respondent's counsel signs the stipulation to be filed with the Court or agrees with the proposed settlement. Petitioner argues that the general rule in Federal courts is that a court may enforce a settlement made between parties even though the settlement is oral and has not been presented to the court. Petitioner states that this is the rule in the Sixth Circuit to which an appeal in this case would lie, citing ARO Corporation v. Allied Witan Co.,531 F.2d 1368 (6th Cir. 1976); Kukla v. National Distillers Products Co.,483 F.2d 619 (6th Cir. 1973). In the ARO Corporation v. Allied Witan Co. case, the plaintiff filed a motion to vacate an order of the court which had been entered pursuant to agreement of the parties dismissing a patent infringement suit with prejudice. The suit sought to enforce specific performance of the settlement agreement *635 which was the basis of the agreement to dismiss the case. The discussion in that case dealt with the jurisdiction of the District Court to enforce the specific performance of a patent license which formed the basis of the agreement settling the litigation in the District Court. The plaintiff took the position that since the license agreement was a part of the settlement of the case in the District Court, the District Court had the jurisdiction to enforce the agreement, and the defendant contended that since the license agreement was a contract, it was enforceable only in a State court proceeding. While there is some language in the opinion in the ARO Corporation v. Allied Witan Co. case that indicates a broad power in Federal courts to enforce settlement agreements in pending litigation, the holding of the case is quite narrow. The case of Kukla v. National Distillers Products Co.,supra, involved an alleged settlement which had not resulted in the filing of any documents with the court. However, the facts showed that nine pretrial conferences had been held in the case and that at the next-to-last of these conferences, which was attended by the district *636 judge, counsel for the plaintiff and the workmen's compensation supervisor for an insurance company had agreed upon a settlement pending approval by the home office of the insurance company and the defendant, National Distillers. The court held that there was a factual dispute as to whether a final settlement had been reached and remanded the case to the District Court for an evidentiary hearing on the disputed terms of the proposed settlement agreement. In the course of its discussion, the court stated (at 621): We initially note that the authority for a District Court's entry of final judgment incorporating the terms of a pre-trial settlement agreement rests under neither Rule 56 nor Rule 16. * * * Rather, such a judgment "is in the nature of a judgment by consent," * * * authorized under what has been consistently recognized as the trial court's "inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case." * * * Both of these cases deal with settlement agreements reached during the course of proceedings participated in by the judge. *637 This Court has uniformly held that where a settlement stipulation has been filed or partial settlement orally stipulated into the record, the Court will enforce the parties' agreement unless for reasons of justice one party or the other should be relieved from the stipulation. See Cataldo v. Commissioner,476 F.2d 628 (2d Cir. 1973), affg. a Memorandum Opinion of this Court; Sennett v. Commissioner,69 T.C. 694 (1978); Saigh, Jr. v. Commissioner,26 T.C. 171 (1956); Rule 91(e), Tax Court Rules of Practice and Procedure.
Here we have a situation which is not comparable to the situation in any of the cased cited and relied on by petitioner. Here, no settlement had been suggested in any hearing, either formal or informal, before this Court. The decision document was never filed with the Court and never signed by or on behalf of the Chief Counsel, [3] who is the representative of the Commissioner in this Court. Cf. Kehoe v. United States, an unreported case ( S.D. N.Y. 1979, 44 AFTR 2d 79-5549, 79-2 USTC par.9524), *638 in which a settlement agreed to in writing by counsel and performed by the Government was enforced. Under these circumstances, it is doubtful that the Court should enforce a settlement agreement even if the withdrawal of the settlement offer had not been for a valid reason. See Cole v. Commissioner,30 T.C. 665 (1958). See also, Cleveland Trust Co. v. United States,421 F.2d 475, 480-482 (6th Cir. 1970), in which it was held that a Revenue Procedure is directory and not mandatory. However, in the instant case, if we were to conclude that this Court should enforce a settlement reached between a taxpayer and the Appeals Division in the 4 months after the referral of the case to the Appeals Division, even though the settlement had not been approved or signed by or on behalf of the Chief Counsel, when the withdrawal of the settlement offer was arbitrary or without valid basis, we would not hold for petitioner in this case. Here, clearly, the case was settled by the Appeals officer in reliance on a misstatement of fact by petitioner's counsel. Assuming the *639 misstatement of fact was totally unintentional on the part of petitioner's counsel, we conclude that the settlement was based on a mutual mistake of fact. The fact was a very material one in that, as petitioner's attorney argued in the protest in which the inaccurate statement was made, the financing arrangements in connection with an apartment complex have a great influence on the value of the property. On the basis of this record, we conclude that justice requires that respondent not be held to a proposed agreement entered into by an Appeals officer based on a misrepresentation of fact by petitioner's counsel, accepted and relied upon by the Appeals officer. See Rule 91(e), Tax Court Rules of Practice and Procedure. Petitioner's motion for entry of decision is denied, and Decision will be entered under *640 Rule 155.
Footnotes
1. By notice served on the parties on March 22, 1983, the above-entitled case was set for trial at the Nashville, Tennessee, session of this Court beginning on June 20, 1983. When the case was called from the calender on June 20, 1983, petitioner submitted to the Court a document entitled "Motion for Order of Settlement" which the Court filed as "Petitioner's Motion for Entry of Decision." This motion was argued on June 21, 1983, each party being represented by counsel. At the conclusion of the argument, the Court stated that petitioner's motion would be denied without prejudice to petitioner to argue on brief, following the trial of the case, the position taken in the motion that the case had been settled and the settlement agreement should be enforced. On June 23, 1983, the parties filed a stipulation in which they disposed of all the issues raised in the pleadings based on the Court's granting of petitioner's motion and directing entry of decision in accordance with a previously negotiated agreement, and also a stipulation disposing of these same issues in the event the Court should deny petitioner's motion for entry of decision. When this stipulation was filed, the Court stated that the order denying petitioner's motion would not be entered and the issue raised by that motion would be considered after receipt of briefs of the parties. Regardless of the action taken on petitioner's motion, decision in this case will be entered under Rule 155, Tax Court Rules of Practice and Procedure↩, to permit the parties to recompute the tax liability on the basis of the disposition of the issues as stipulated.
2. Delegation Order No. 190, 1982-1 C.B. 350, 352, effective March 21, 1982, supplemented and amended Delegation Orders No. 60 (rev. 5), 1979-2 C.B. 482, and 66 (rev. 10), 1980-1 C.B. 571↩, but made no change in those orders pertinent to this case.
2. It is to be noted that the letter signed by Appeals Officer Best informing petitioner's counsel that the proposed settlement reached with the Appeals officer had been approved was dated April 11, 1983.↩
3. Delegation Order No. 190, 1982-1 C.B. 350↩, placed the functions of the Appeals Division, with certain exceptions not here pertinent, under the Chief Counsel, Internal Revenue Service. This order, however, did not authorize Appeals officers to represent respondent in the Tax Court or to sign pleadings or stipulations on behalf of the Chief Counsel.