ROBERT CHURCHILL MACELVAIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
MacElvain v. Commissioner
Docket No. 37347-84.
United States Tax Court
T.C. Memo 1987-366; 1987 Tax Ct. Memo LEXIS 366; 53 T.C.M. (CCH) 1442; T.C.M. (RIA) 87366; July 23, 1987. Marina L. Lao, for the petitioner. Robert W. West, for the respondent. POWELL
MEMORANDUM OPINION POWELL, Special Trial Judge:[1] This matter is before the Court on petitioner Robert MacElvain's motion to vacate the non-final stipulated decision in this case, pursuant to Rule 162. [2] The issue to be decided is whether petitioner has shown sufficient exceptional and compelling circumstances to warrant the granting of relief. At the time of the filing of his petition, petitioner resided in St. Peter Port, Guernsey in the Channel Isles. *367 The facts are as follows: From at least 1980 until 1986, petitioner conducted business primarily outside the United States. He prepared and filed a Federal income tax return for 1980, which was examined petitioner was living in Costa Rica and hired a Mr. Henson in Arizona to represent him in the examination. Although petitioner had never met Mr. Henson, and did not know whether he was an accountant or attorney or otherwise, petitioner provided records to Mr. Henson, the exact nature of which remains unclear. Petitioner did not communicate with Mr. Henson during the examination, even though petitioner asserts that he paid Mr. Henson "several thousand dollars." According to the petitioner, Mr. Henson "totally defaulted in his duty and responsibility." On or about June 14, 1984, petitioner received a notice of deficiency for the taxable year 1980. The notice determined a deficiency in income tax in the amount of $ 576,896 and an addition to tax under section 6653(a). Petitioner retained Michael Newsom to represent him. Mr. Newsom had previously handled several legal matters for the petitioner to petitioner's satisfaction, including the formation of corporations and the purchase *368 or issuance of certain bonds. Additionally, the wives of petitioner and Mr. Newsom were engaged in a travel agency business. When the petitioner approached Mr. Newsom asking for his help with the notice of deficiency, Mr. Newsom told the petitioner that he was not a tax attorney and had never handled a tax case before. Nevertheless, petitioner chose to use Mr. Newsom as his attorney. Petitioner's initial consultation with Mr. Newsom lasted ten to fifteen minutes. Altogether they discussed the case about six times, but aside from meeting with respondent's agents, they did not discuss the case in any detail. They did, however, meet at other times for other matters. Since petitioner was often traveling, Mr. Newsom could not easily communicate with the petitioner. Petitioner generally would not tell Mr. Newsom how or where he could be reached or when he would be in a particular location. Mr. Newsom met with respondent's attorney twice during the preparation of this case for trial. During the first meeting on November 12, 1985, Mr. Newsom argued petitioner's case and presented the documentation he had received from petitioner and Mr. Henson. Respondent's attorney replied that *369 the documentation was not sufficient to substantiate the deductions at issue. Following the meeting Mr. Newsom explained respondent's position to petitioner and decided that it would be best for petitioner to be present to explain his position. Mr. Newsom felt that the case could be resolved if petitioner could produce sufficient documentation to support his claimed deductions. The case was calendared for trial on February 10, 1986. On December 24, 1985, respondent filed a motion to show cause why the facts and evidence set forth in respondent's motion should not be granted. Mr. Newsom responded by contacting respondent's attorney and explaining his difficulty in getting petitioner's records. Since he had not practiced in the Tax Court before, he was not aware that failure to formally respond to the Court's show cause order would result in the granting of respondent's motion. In fact, on January 28, 1986, the Court granted respondent's motion because of petitioner's failure to comply with the order. Mr. Newsom did not inform petitioner about the show cause order because the petitioner had not been in contact. Other than producing documents given him by petitioner and attending *370 the two conferences with respondent, Mr. Newsom did not communicate with respondent. He did not join in the preparation of a stipulation, and he did not file a pretrial memorandum, as required by the Court's pretrial order. Since petitioner told Mr. Newsom that the documentation petitioner would provide would substantiate all of the deductions, Mr. Newsom felt that no action was necessary except to forward such documentation to respondent. To explain his conduct, Mr. Newsom testified that he was then in the process of moving his offices and had difficulty locating files. He also explained that he was under personal stress in early 1986. On February 5, 1986, with both petitioner and Mr. Newsom present, an offer of settlement of the case was discussed with respondent. The offer was not accepted at that time. On February 7, 1986, petitioner met with respondent and informed respondent that he had dismissed Mr. Newsom, and that he wished to proceed without Mr. Newsom's assistance. Respondent's counsel, concerned that Mr. Newsom was not present since he was still counsel of record, called Mr. Newsom and discussed with him the fact that he would have to formally withdraw before *371 the Court on February 10, 1986, the date set for trial. Petitioner was in respondent's office during the call. Mr. Newsom subsequently was granted leave to withdraw from the case. Respondent and petitioner negotiated a settlement, contingent on petitioner's providing certain additional documents to substantiate his position. Under the settlement the deficiency was reduced to $ 190,291. The offer of settlement accepted by petitioner was the same offer discussed while Mr. Newsom was present. Although petitioner mentioned that his daughter was ill, and that he did not want to have to appear at trial, petitioner never requested a continuance because of his daughter or because of Mr. Newsom's withdrawal from the case. There was no evidence of undue pressure or coercion from respondent's counsel. In addition, petitioner was in contact with an attorney by phone during his meeting with respondent. We note at the outset that this Court is reluctant to set aside a stipulated decision in absence of fraud, mutual mistake of fact, or other like cause. See Saigh v. Commissioner,26 T.C. 171, 176 (1956); see also Estate of Jones v. Commissioner,T.C. Memo. 1984-53, *372 affd. 795 F.2d 566 (6th Cir. 1986). We also note that there is no evidence of the fraud, coercion, or mistake that would warrant vacating the stipulated decision. Petitioner contends that because of "exceptional and compelling circumstances" the stipulated decision should be vacated pursuant to rule 60(b)(6) of the Federal Rules of Civil Procedure.[3] See Rule 1(a), Tax Court Rules of Practice and Procedure.[4] Federal rule 60(b)(6) provides that the Court may relieve a party from a final judgment or order for any reason not already covered by rules 60(b)(1) through 60(b)(5) "justifying relief from the operation of the judgment." Judgments may be vacated whenever exceptional and compelling circumstances exist so as to render such relief appropriate to accomplish justice. See, e.g., Ackermann v. United States,340 U.S. 193, 199 (1950). *373 Petitioner asserts two exceptional circumstances. First, he contends that he did not have adequate representation by counsel during the period of trial preparation in this case. Second, petitioner states that he was under great emotional stress when he signed the stipulation in question. Rule 60(b)(6) is a "catch-all" clause, which affords relief only in "extraordinary" circumstances. Ackermann v. United States, supra;Goland v. Central Intelligence Agency,607 F.2d 339, 373 (D.C. Cir. 1978). The District of Columbia Circuit, to which this case is appealable, [5] has held that rule 60(b)(6) is broad enough to permit relief in the case where "personal problems of counsel cause him grossly to neglect a diligent client's case and mislead the client." L. P. Steuart, Inc. v. Matthews,329 F.2d 234, 235 (D.C. Cir. 1964) (emphasis supplied). Rule 60(b) cannot, however, be employed simply to rescue a litigant from strategic choices that latter turn out to be improvident. Good Luck Nursing Home, Inc. v. Harris,636 F.2d 572, 577 (D.C. Cir. 1980). *374 After reviewing the facts of this case, including petitioner and Mr. Newsom's testimony, we are not convinced that Mr. Newsom's handling of the case was grossly negligent. Nor are we persuaded that petitioner was "misled" into believing that Mr. Newsom was industrious. See Jackson v. Washington Monthly Co.,569 F.2d 119, 122 (D.C. Cir. 1977). Mr. Newsom informed petitioner from the outset that he was not a tax attorney and had never practiced before this Court. Mr. Newsom twice met with respondent and argued what he perceived to be the substantiation problems with the case. The only procedural mistake that Mr. Newsom made was in failing to properly respond to the Court's show cause order of January 6, 1986, because he thought he had responded sufficiently to the show cause order by contacting respondent's attorney and explaining his difficulty in getting petitioner's records. In all events, petitioner bears some responsibility since he failed to provide Mr. Newsom with the necessary records. Otherwise, Mr. Newsom's actions show that he did not intentionally or grossly negligently fail to represent the petitioner. Petitioner, an experienced businessman, simply *375 cannot play the part of the "blameless" client, for which rule 60(b)(6) was written. Petitioner admitted that there was no easy way for Mr. Newsom to contact him. Although petitioner met with Mr. Newsom at times for other matters, he did not inquire about the tax litigation. The fact that petitioner travels a lot, and put his trust in Mr. Newsom, cannot relieve him of responsibility for his own case. As stated by the Supreme Court in Link v. Wabash Railroad Co.,370 U.S. 626, 633 (1962): "Petitioner voluntarily chose [his] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." Cf. Jackson v. Beech,636 F.2d 831, 837 (D.C. Cir. 1980); L. P. Steuart v. Matthews, supra (a default judgment may be set aside in case of gross attorney negligence where client is not personally negligent.) Petitioner's second "compelling circumstance" was that he was under extreme emotional stress when he signed the stipulated decision. Petitioner claims that he signed the decision documents on Friday, February 7, 1986 because he believed his daughter was ill *376 and thus did not want to be in court the following Monday. In a May 13, 1986, affidavit, petitioner stated that he had a report that his daughter was in the hospital and critically ill, and that he was afraid his daughter was dying. In an affidavit filed with this Court August 25, 1986, petitioner stated that he settled the case while under the belief that his daughter was "deathly ill" with "Meningismus." However, the statement of the daughter's doctor, James E. Muntz, indicates that petitioner's daughter was admitted to the hospital with a viral infection on January 24, 1986, almost two weeks before petitioner met with respondent's counsel. Dr. Muntz further stated that the daughter was discharged the next day in satisfactory condition, the condition was never considered serious, and at no time did she undergo any unusual tests. Based on the doctor's statements, we find it highly unlikely that petitioner was under the belief on February 7th that his daughter's condition was critical. Indeed, respondent's attorney testified that although petitioner mentioned at the time of settlement that his daughter was sick and that he was going to visit her in Houston, petitioner did not *377 seem overly concerned with his daughter's health. We find that petitioner has not alleged a set of exceptional circumstances resulting in extreme hardship. Petitioner entered into the stipulated decision freely and without pressure from respondent, and thus granting of petitioner's motion is not "appropriate to accomplish justice." Ackermann v. United States, supra at 199. Accordingly, petitioner's motion to vacate will be denied. An appropriate order will be entered.
Footnotes
1. This case was assigned pursuant to the provisions of section 7456(d) (redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rule 180 et seq. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, and as in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise provided. ↩
3. Petitioner rightly concedes that if he is to get relief at all, it will come under Rule 60(b)(6), not rule 60(b)(1), since Mr. Newsom's behavior would probably not be considered excusable neglect under rule 60(b)(1). See, e.g. Solaroll Shade and Shutter Corp. v. Bio-Energy Systems, Inc.,803 F.2d 1130, 1133↩ (11th Cir. 1986) (an attorney's negligent failure to respond to a motion does not normally constitute excusable neglect). 4. Rule 60(b), Federal Rules of Civil Procedures, provides in part, "On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; * * * or (6) any other reason justifying relief from the operation of the judgment." As respondent correctly points out, rule 60(b)(6) only applies to final judgments and the decision in this case was not yet final when petitioner filed his motion to vacate. However, cases arising under rule 60↩ are illustrative. 5. See Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940↩ (1971).