**Vincent FARRELL, Jr. and Clotilde Farrell, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

**No. 428, Docket 96–4197.**

United States Court of Appeals, Second Circuit.

Argued Nov. 6, 1997.

Decided Feb. 4, 1998.

---

Hugh Janow (Seth L. Marcus, on the brief), Pearl River, NY, for Petitioners–Appellants.

Joan I. Oppenheimer, Tax Division, United States Department of Justice, Washington, DC, for Respondent–Appellee.

Before: MINER and PARKER, Circuit Judges, and ARTERTON, District Judge[1].

1. Honorable Janet Bond Arterton, District Judge, United States District Court for the District of Connecticut, sitting by designation.

ARTERTON, District Judge:

The facts of this case present the question of when and how the unique provisions of Rule 91 of the Tax Court's Rules of Practice and Procedure interplay with Rule 41 of the same, 26 U.S.C. foll. § 7453. The dispute in this case centers on the Tax Court's grant of leave to amend the Commissioner's answer to the taxpayers' petition for redetermination of a tax deficiency. The taxpayers in this case, Clotilde Farrell and Vincent Farrell, Jr. ("the Farrells"), maintain that the Tax Court abused its discretion in so granting the leave to amend, arguing that the amendment altered the parties' previous binding stipulation of issues by permitting the trial of claims against the taxpayers that were outside a stipulation of triable issues. The Farrells now seek to set aside the resulting augmented liabilities imposed as a result of the trial on the new issues asserted in the Commissioner's amended answer. Because we agree that the Tax Court should have considered the provisions of Tax Court Rule 91 before granting the leave to amend the Commissioner's answer, we vacate the judgment of the Tax Court.

## BACKGROUND

This case is one of the numerous "Plastics Recycling" cases that arose out of a tax shelter scheme in the early 80's. The basic structure of the underlying deal consisted of Packaging Industries ("PI") manufacturing and selling Sentinel EPE recyclers to Ethanol Cogeneration, Inc. ("ECI") for $981,000 each. ECI, in turn, resold the recyclers to F & G Equipment Corp. ("F & G") for $1,162,-667 each. F & G then leased the recyclers to SAB Resource Recycling Associates and SAB Resource Reclamation Associates (both were limited partnerships of which Stuart Becker was the controlling person of the general partner; hereinafter, "the Partnerships") for twelve years, and made monthly rental payments of $103,814. The Partnerships then licensed those machines to First Massachusetts Equipment Corp. ("FMEC") for twelve years at a guaranteed minimum royalty of $103,814 per month. FMEC then sublicensed them back to PI. The sales of the machines from PI to ECI were financed with nonrecourse notes. Approximately 7% of the sales price of the recyclers sold by ECI to F & G was paid in cash, with the remainder financed through notes. These notes provided that 10% of the notes were recourse, but that the recourse portion of the notes was only due after the nonrecourse portion was paid in full. The recyclers had a manufacturing cost of approximately $18,000 each. *See Provizer v. Commissioner*, 63 T.C.M. (CCH) 2531, *aff'd. without published opinion*, 996 F.2d 1216 (6th Cir.1993), the lead case of the plastics recycling cases, for a more detailed discussion of the transactions involved. In 1982, the appellants acquired a 4.5% limited partnership interest in SAB Reclamation for $25,000. On their 1982 return, they claimed an operating loss in the amount of $20,050 and investment tax and business energy credits totaling $41,856.

In a Notice of Deficiency dated August 25, 1989, the Commissioner determined deficiencies in the Farrells' federal income tax payments for 1980 and 1982 in the respective amounts of $55,242 and $51,236, due in part to their participation in the plastics recycling tax shelter scheme. Pursuant to 26 U.S.C. § 6212 and Tax Court Rule 20, which provide for the filing of petitions challenging such notices in the Tax Court, the Farrells filed a petition on November 24, 1989, seeking a redetermination of the asserted deficiencies. The Commissioner then filed her answer to the petition, which Tax Court Rule 36 requires must "advise the petitioner and the Court fully of the nature of the defense." 26 U.S.C. foll. § 7453.

On April 22, 1992, pursuant to Tax Court Rule 91, *infra*, the parties filed a Stipulation of Settled Issues ("First Stipulation"), which provided that:

With respect to the adjustments on respondent's notice of deficiency issued to petitioners for the taxable years 1980 and 1982 the parties stipulate to the following terms of settlement:

1. For the taxable year 1980 there is due from the petitioners a deficiency in income tax in the amount of $29,589.00.

2. For the taxable year 1980, $14,-795.00 is a substantial underpayment attributable to tax-motivated transactions,

for purposes of computing the interest payable with respect to such amount, pursuant to I.R.C. § 6621(c).

3. The adjustment of $1,906.00 for the taxable year 1982 on the notice of deficiency relates to petitioners' investment in SAB Associates.

4. On Schedule E of their 1982 federal income tax return, petitioners claimed a loss of $1,906.00 with respect to their interest in SAB Associates.

5. For the taxable year 1982, petitioners are entitled to deduct $381.00 with respect to their interest in SAB Associates.

6. The only issues remaining in dispute between the parties are an adjustment of $20,050.00 and the disallowance of an investment credit, both for the taxable year 1982, on respondent's notice of deficiency. These issues relate to the Plastics Recycling tax shelter litigation project and will either be resolved by the parties or will be submitted to the Court for resolution.

7. The parties agree that the terms of this stipulation of settlement will be incorporated in a decision to be entered by the Court in this case.

The parties agree to this Stipulation of Settled Issues.

On February 24, 1994, nearly two years after the First Stipulation was agreed to, the Commissioner received leave from the Tax Court, in an unwritten decision, to file an amendment to the answer over the Farrells' objection. In the amended answer, the Commissioner asserted, for the first time, additions to tax for taxable year 1982 in the amount of $12,127 under I.R.C. § 6659[2]for valuation overstatement. An "addition to tax," as the name suggests and in contrast to a "tax deficiency," is not a sum that the taxpayers originally owed but failed to pay, but rather a penalty due in addition to any tax underpayments. A valuation overstatement results when the value of any property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount determined to be the correct

amount of such valuation or adjusted basis. *See* I.R.C. § 6659(c). The Commissioner also asserted, for the first time, additions to tax in the amount of $2,552 under I.R.C. § 6653(a)(1) for negligence, and under I.R.C. § 6653(a)(2) in an amount equal to 50 percent of the interest due on $50,278.

Based on the amended answer, with its new assertions of penalties, on March 31, 1994, the parties entered into a Second Stipulation of Settled Issues ("Second Stipulation"), which provided that:

1. Petitioners are not entitled to any deductions, losses, investment credits, business energy investment credits or any other tax benefits claimed on their 1982 tax return as a result of their participation in the Plastics Recycling Program.

2. The underpayments in income tax attributable to petitioners' participation in the Plastics Recycling Program are substantial underpayments attributable to a tax motivated transaction, subject to the increased rate of interest established under I.R.C. § 6621(c), formerly section 6621(d).

3. This stipulation resolves all issues that relate to the items claimed on petitioners' 1982 tax return resulting from petitioners' participation in the Plastics Recycling Program, with the exception of petitioners' potential liability for additions to the tax for a valuation overstatement under I.R.C. § 6659 and for negligence under the applicable provisions of I.R.C. § 6653(a).

4. With respect to the issue of the addition to the tax under I.R.C. § 6659, petitioners do not intend to contest the issue of the value of the Sentinel Recycler or the existence of a valuation overstatement on the petitioners' return; however, petitioners preserve their right to argue that the underpayment in tax is not attributable to a valuation overstatement within the meaning of I.R.C. § 6659(a)(1), and that the Secretary should have waived the addition

---

**2.** All statutory citations are to the Internal Revenue Code as it was in effect at the time of the relevant events. Sections 6659 and 6653 were repealed by the Omnibus Budget Reconciliation

Act of 1989, Pub.L. No. 101–239, 103 Stat. 2106 § 7721(c)(2), reprinted in U.S.C.C.A.N. 1906, 2219–35, effective for tax returns due after 1989.

to tax pursuant to the provisions of I.R.C. § 6659(e).

This Second Stipulation conceded the issues of the $20,050 adjustment and disallowance of investment credit, which had been left for later resolution by the terms of the First Stipulation.[3] A trial was held in March and April of 1994 on the sole issues of the additions to tax asserted in the Commissioner's amended answer. The Tax Court determined that the Farrells were liable both for the valuation overstatement penalty and the negligence penalty. *See Spears v. Commissioner*, 72 T.C.M. (CCH) 223 (1996).

The Farrells now appeal, contending that the Tax Court's grant to the Commissioner of leave to amend its answer to add the penalties under Sections 6659 and 6653 was an abuse of discretion in that the amended answer effectively changed the terms of the First Stipulation without consideration of the binding nature of stipulations provided for under Tax Court Rule 91(e). The Commissioner responds that the Tax Court did not abuse its discretion, because under Tax Court Rule 41(a) motions to amend should be freely given, absent prejudice, undue delay, bad faith, futility, or dilatory motive, *see Le-Fever v. Commissioner*, 100 F.3d 778, 784 (10th Cir.1996), none of which the appellant ever showed as reason for denying the amendment. Thus, this case presents something of a procedural hybrid, implicating simultaneously the lenient standards of Tax Court Rule 41, as well as the stringent requirements of Tax Court Rule 91.

## DISCUSSION

### Stipulations in the Tax Court

Tax Court Rule 91 governs stipulations for trial, and provides:

> (a) Stipulations required. (1) General. The parties are required to stipulate, to the fullest extent to which complete or qualified agreement can or fairly should be reached, all matters not privileged which are relevant to the pending case, regard-

less of whether such matters involve fact or opinion or the application of law or fact.

. . .

> (e) Binding effect. A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties. *The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires.* A stipulation and the admission therein shall be binding and have effect only in the pending case and not for any other purpose, and cannot be used against any of the parties thereto in any other case or proceeding.

26 U.S.C. foll. § 7453 (emphasis added).

This stipulation process has been called "the bedrock of Tax Court practice," *Branerton Corp. v. Commissioner*, 61 T.C. 691, 692, 1974 WL 2703 (1974), and is considered "largely responsible for the court's ability to keep current with the thousands of cases docketed each year," Harold Dubroff, *The United States Tax Court: An Historical Analysis* 277 (1979). "The stipulation process has broad scope, and is not confined to the stipulation of facts or evidence." *Willamette Indus. v. Commissioner*, 69 T.C.M. (CCH) 2319 (1995). The Tax Court has provided by rule this enforceable means of facilitating trials in its court: "Courts have the inherent authority to enforce agreements between the parties as they deem necessary and prudent to achieve the orderly and expeditious disposition of cases in their jurisdiction. . . . Our Rules provide that stipulations between the parties are binding, and may not be changed unless 'justice requires.' " *Id.* (*quoting* Rule 91(e), citations omitted). As commentators have observed, "There is no rule in the Federal Rules of Civil Procedure comparable to Rule 91 of the Tax Court Rules of Practice and Procedure, requiring the parties to stipulate, to the fullest extent to which complete or qualified agreement can or fairly should be reached . . ." Laurence F.

---

3. These issues were conceded by the appellants after identical issues were decided against the taxpayer in the lead plastics recycling case of *Provizer v. Commissioner*, 63 T.C.M. (CCH) 2531, *aff'd.* without published opinion, 996 F.2d 1216 (6th Cir.1993).

Casey, et al., *Federal Tax Practice* § 11.49a (1993).[4]

The Tax Court has been "reluctant to set aside a stipulated decision in absence of fraud, mutual mistake of fact, or other like cause." *MacElvain v. Commissioner*, 53 T.C.M. (CCH) 1442 (1987) (*citing Saigh v. Commissioner*, 26 T.C. 171, 176, 1956 WL 631 (1956); and *Estate of Jones v. Commissioner*, 47 T.C.M. (CCH) 1011, *aff'd.* 795 F.2d 566 (6th Cir.1986)); *see also Korangy v. Commissioner*, 56 T.C.M. (CCH) 989 (1989) (unilateral error, in the absence of misrepresentation by the adverse party, not sufficient ground to set aside stipulation). As the Sixth Circuit has explained, "It would seem that if parties could challenge their prior stipulations at will, stipulations would lose much of their purpose." *Estate of Quirk v. Commissioner*, 928 F.2d 751, 759 (6th Cir. 1991).

 The Commissioner and the taxpayers are equally bound by stipulations validly entered into. As we observed in *Kampel v. Commissioner*, 634 F.2d 708 (2d Cir.1980), even where the stipulation creates a windfall for the taxpayer, the stipulation is nonetheless binding on the government. *Id.* at 710 n. 3 ("Although the Service presumably did not intend to give away its case, it is difficult to find the alleged ambiguity in this wording. We thus deem the commissioner bound by the stipulation.").

In a case presenting similar issues, *Tate & Lyle, Inc. v. Commissioner*, 71 T.C.M. (CCH) 2200 (1996), *rev'd on other grounds*, 87 F.3d 99 (3d Cir.1996), the parties filed a Stipulation of Settled Issues, and based upon that stipulation came to a settlement agreement with respect to all but one of the remaining issues. There was no specific statement in the agreement as to whether new issues could or could not be raised. Shortly thereafter, the Commissioner discovered that she may have erred in allowing petitioner a general business credit. The Commissioner then filed a motion for leave to file an amendment to the answer, and as here, the petitioners opposed the motion. In denying the Commissioner's motion, the Tax Court explained that:

> As we see it, the stipulation of settled issues, like a contract, reflects the parties' bargained-for exchange—each of the parties made concessions in the course of arriving at the settlement. *See Saigh v. Commissioner*, 26 T.C. 171, 177, 1956 WL 631 (1956) ... Recognizing that respondent was in possession of all the facts necessary to raise the [general business credit] issue at the time the deficiency notice was issued in this case, and giving due regard to the policy favoring the settlement of cases brought before this Court, we are convinced that justice would best be served if respondent is precluded from raising a new issue at this time...

*Tate & Lyle*, 71 T.C.M. (CCH) 2200 (citation omitted).

### Interpretation of the First Stipulation

 Conceding that the First Stipulation here was binding pursuant to Rule 91(e), the Commissioner maintains that the language of the First Stipulation did not preclude the possibility of new penalties being raised at a later stage, arguing that if the appellants truly meant for the First Stipulation to prevent further penalties, the Farrells should have specifically stated this in the first Stipulation. This argument, of course, runs both ways, and the government could have specifically reserved the right to allege additional penalties in the First Stipulation, but failed to do so.

Because the Second Stipulation, filed after the amended answer, contains agreements relating to the new penalties, the Commissioner argues that this supports her interpretation of the First Stipulation as allowing for new penalties.[5] This reasoning, however,

---

4. The closest that the Federal Rules come to a counterpart of Rule 91 is Fed.R.Civ.P. 16, which authorizes, but does not require, the trial court to hold pretrial conferences. Included among the subjects for potential consideration at these pretrial conferences are "the formulation and simplification of the issues ... the possibility of obtaining admissions of fact ... [and] stipulations regarding the authenticity of documents ..." Fed.R.Civ.P. 16(c).

5. In the Second Stipulation, the parties agreed that the:

begs the question of whether the Tax Court abused its discretion in allowing the amendment of the Commissioner's answer to add theretofore unmentioned penalties. Because agreements relating to the new penalties in the Second Stipulation were only necessary to reflect the new issues raised by the Commissioner's amended answer, it is hard to see how the Second Stipulation can give meaning to the language of the First Stipulation, which was agreed to before the answer was amended.

The Commissioner's further argument that the First Stipulation does not exclude the penalties because the additional penalties were not the subject of negotiations[6] at the time of the First Stipulation seems only to confirm that both parties envisioned that the First Stipulation left for later resolution only the issues specified. The stipulation fails to mention future penalties precisely because they were not at issue. By the Commissioner's reasoning, it is the taxpayer's obligation to catalog for exclusion penalties that the Commissioner had not yet contemplated, in effect requiring the taxpayer to rouse the proverbial sleeping dog.

The appellants argue that the First Stipulation was an agreement to settle all issues, except those of the $20,050.00 adjustment and the disallowance of the investment credit. Apart from those two items, which were subsequently conceded by the taxpayers, they considered their tax problems to be completely resolved. In support of their reading, the Farrells particularly emphasize the word "only" in the first sentence of paragraph six of the First Stipulation in combination with the statement "on respondent's notice of deficiency."[7] Paragraph six decreed that: "The only issues remaining in dispute between the parties are an adjustment of

$20,050.00 and the disallowance of an investment credit, both for the taxable year 1982, on respondent's notice of deficiency." The dictionary definitions of "only" include: that which "is without companions or associates"; "as a single solitary fact or instance or occurrence: as just the one simple thing and nothing more or different"; and "being one or more of which there exist no others of the same class or kind." Webster's Third New International Dictionary 1577 (3d ed.1993). In other words, it is a word that connotes exclusivity.

■ The Tax Court is constrained to give effect to the plain meaning of the language in a stipulation in order to carry out the intent of the parties. *See Gridley v. Commissioner*, 73 T.C.M. (CCH) 2717 (1997); *see also Meyer's Estate v. Commissioner*, 200 F.2d 592, 596 (5th Cir.1952) (holding that the Tax Court erred in "failing to give effect to the plain meaning and import of the stipulation between the parties."). The plain meaning of "only" has the purpose and effect of excluding the remaining universe. The "only" issues remaining to be settled were the adjustment of $20.050.00 and the disallowance of an investment credit, consistent with the Notice of Deficiency in which there were no additions to tax asserted. Particularly as the First Stipulation clearly refers to the Notice of Deficiency for identification of matters at issue, we find persuasive the Farrells' reading of "only" as precluding other unmentioned penalties. As it would be unreasonable to require the Farrells to alert the government to its own omissions, we accept the plain meaning of the use of the word "only" in the First Stipulation as limiting the unsettled issues to be tried to just those specified by stipulation of the parties.

... stipulation resolves all issues that relate to the items claimed on petitioners' 1982 tax return resulting from petitioners, participation in the Plastics Recycling Program, with the exception of petitioners' potential liability for additions to the tax for a valuation overstatement under I.R.C. § 6659 and for negligence under the applicable provisions of I.R.C. § 6653(a).

6. These penalties were neither the subject of negotiation, as conceded at oral argument, nor even contemplated by the government at the time of the First Stipulation.

7. The August 1989 Notice of Deficiency did not list any additions to tax in the space provided. (R. 663, 714). At oral argument, the Commissioner explained that she knew of only one other plastics recycling case in which the Notice of Deficiency did not include the additions to tax. In distinction to this case, the Commissioner had asserted the additions to tax in her original answer to the petition in the other case.

Moreover, absent the amended answer, and prior to the *Provizer* decision, only the issues left for later resolution in the First Stipulation would have been tried. The government's argument that the First Stipulation did not exclude other penalties is undercut by its need to seek an amendment to its answer.

As in *Kampel*, 634 F.2d at 710 n. 3, the Commissioner did not mean to "give away [her] case," but absent any ambiguity in the wording of the stipulation or other considerations, the taxpayer had no obligation to alert the Commissioner to overlooked penalties where nothing the taxpayer had done caused the omission. None of the foregoing is to say that the Commissioner could *never* assert additional penalties after entering a stipulation; rather, that where Rule 91(e) applies, the Tax Court must proceed in accordance with the provisions of that rule.

**The Second Stipulation**

██ Interpreting the First Stipulation does not end this inquiry, however. Despite the fact that the Farrells opposed the Commissioner's motion for leave to amend the answer on the same grounds as the appellants now appeal, the parties nonetheless entered into the Second Stipulation based on the issues raised by the amended answer. While we are not persuaded that the language of the Second Stipulation gives meaning to the First Stipulation as argued by the Commissioner, there remains the issue of whether the Farrells waived their right to appeal, i.e., "ratified", the grant of the leave to amend by entering into the Second Stipulation.

██ If the Second Stipulation constituted a stipulated *judgment*, then the Farrells would likely have waived the right to appeal by entering such a stipulation. "A party consenting to entry of judgment generally waives the right to appeal. This rule applies to stipulated judgments of the Tax Court." *Clapp v. Commissioner*, 875 F.2d 1396, 1398 (9th Cir.1989). This is not such a case. As to the additions to tax, the Second Stipulation by its terms preserved those issues for trial; it did not create a stipulated judgment as to those issues.

In determining the significance of the Second Stipulation, moreover, it is important to recall the important role of stipulations in the Tax Court. Under Tax Court Rule 123 a party may be held in default for failure to proceed as provided in the Tax Court Rules:

> When any party has failed to ... proceed as provided by these Rules or as required by the Court, he [or she] may be held in default by the Court either on motion of another party or on the initiative by the Court. Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper, or may impose such sanctions ... as the Court may deem appropriate.

26 U.S.C. foll. § 7453; *see also Larsen v. Commissioner*, 765 F.2d 939 (9th Cir.1985); *Miller v. Commissioner*, 654 F.2d 519 (8th Cir.1981). Had the Farrells refused to stipulate that the newly added issues were the remaining trial issues, they risked noncompliance with Rule 91(f)(1), which addresses refusals to stipulate:

> Noncompliance by a Party. (1) Motion to Compel Stipulation. If, after the date of issuance of trial notice in a case, a party has refused or failed to confer with his [or her] adversary with respect to entering into a stipulation in accordance with this Rule, or [a party] has refused or failed to make such a stipulation of any matter within the terms of this Rule, the party proposing to stipulate may ... file a motion with the Court for an order directing the delinquent party to show cause why the matters covered in the motion should not be deemed admitted for the purposes of the case.

26 U.S.C. foll. § 7453.

The Farrells could have refused to stipulate to anything regarding the additions to tax asserted in the amended answer and could have appealed any resulting sanctions assessed. The other alternative was to do as they did, and stipulate to the best of their ability without conceding the additions to tax, but by doing so risk that a ground for appeal would be foreclosed. We do not think the taxpayer should be placed between such a procedural Scylla and Charybdis. Thus, we

read the Second Stipulation as merely the taxpayers' recognition that as a result of the Court's decision to permit the Commissioner's addition to tax allegations, the disputed issue of the penalties remains to be tried. *See, e.g., Estate of Quirk*, 928 F.2d at 759 ("In fact, narrowing disputes to the essential disputed issues is the primary function of stipulations.").

█ We recognize that the outcome of this case will result in one party's windfall. Either the taxpayers will escape the imposition of penalties as a result of the Commissioner inattention,[8] or the Commissioner will prevail despite her continuing oversights in the Notice of Deficiency, the original answer, and the First Stipulation. Although the Farrells may have dodged this bullet only through government inadvertence, the Commissioner cannot insist that taxpayers are bound by their stipulations while she seeks avoidance of hers. Stipulations are uniquely important to the Tax Court. Where an amendment to a pleading effectively deprives one party of the benefit of its earlier stipulation, the requirements of Tax Court Rule 91 must qualify the leniency of Tax Court Rule 41. *See Tate & Lyle*, 71 T.C.M. (CCH) 2200. We hold that under these circumstances, in the absence of an examination by the Tax Court of the factors provided by Tax Court Rule 91(e) for relief from a stipulation, the First Stipulation should have been given binding effect, and the Tax Court abused its discretion in granting the Commissioner leave to amend the answer. The judgment of the Tax Court is vacated. The arguments raised by appellants in regard to the substance of the trial are accordingly moot and thus need not be addressed.

---

**8.** The taxpayers do not walk away unscathed from their involvement in the plastics recycling deal. They did concede all the issues as asserted in their original Notice of Deficiency, and are liable for those amounts.