T.C. Memo. 1996-495


UNITED STATES TAX COURT


WASHOE RANCHES #1, LTD., WASHOE RANCHES #2, LTD., WASHOE RANCHES
#3, LTD., WASHOE RANCHES #4, LTD., WASHOE RANCHES #5, LTD.,
WASHOE RANCHES #6, LTD., WASHOE RANCHES #7, LTD., WALTER J. HOYT
III, TAX MATTERS PARTNER, ET AL.,[1] Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos.  8916-89,   8935-89,      Filed November 4, 1996.

             8936-89,   21998-89,
             21999-89,  22000-89,

---

[1]    The following cases are consolidated herewith:  Florin Farms #1, Ltd.,
Florin Farms #2, Ltd., Florin Farms #3, Ltd., Florin Farms #4, Ltd., Florin
Farms #5, Ltd., Florin Farms #6, Ltd., Florin Farms #7, Ltd., Walter J. Hoyt
III, Tax Matters Partner, docket No. 8935-89; Durham Farms #1, Ltd., Durham
Farms #2, Ltd., Durham Farms #3, Ltd., Durham Farms #4, Ltd., Durham Farms #5,
Ltd., Durham Farms #6, Ltd., Walter J. Hoyt III, Tax Matters Partner, docket
No. 8936-89; Florin Farms #1, Ltd., Florin Farms #2, Ltd., Florin Farms #3,
Ltd., Florin Farms #4, Ltd., Florin Farms #5, Ltd., Florin Farms #6, Ltd.,
Florin Farms #7, Ltd., Walter J. Hoyt III, Tax Matters Partner, docket No.
21998-89; Florin Farms #1, Ltd., Florin Farms #2, Ltd., Florin Farms #3, Ltd.,
Florin Farms #4, Ltd., Farms #5, Ltd., Florin Farms #6, Ltd., Florin Farms #7,
Ltd., Walter J. Hoyt III, Tax Matters Partner, docket No. 21999-89; Durham
Farms #1, Ltd., Durham Farms #2, Ltd., Durham Farms #3, Ltd., Durham Farms #4,
Ltd., Walter J. Hoyt III, Tax Matters Partner, docket No. 22000-89; Durham
Farms #1, Ltd., Durham Farms #2, Ltd., Durham Farms #3, Ltd., Durham Farms #4,
Ltd., Walter J. Hoyt III, Tax Matters Partner, docket No. 22073-89; Washoe
Ranches #6, Ltd., Washoe Ranches #7, Ltd., Walter J. Hoyt III, Tax Matters
Partner, docket No. 26720-89; Washoe Ranches #1, Ltd., Washoe Ranches #2,
Ltd., Washoe Ranches #3, Ltd., Washoe Ranches #4, Ltd., Washoe Ranches #5,
Ltd., Walter J. Hoyt III, Tax Matters Partner, docket No. 27676-89; Washoe
Ranches #1, Ltd., Washoe Ranches #2, Ltd., Washoe Ranches #3, Ltd., Washoe
Ranches #4, Ltd., Washoe Ranches #5, Ltd., Walter J. Hoyt III, Tax Matters
Partner, docket No. 27722-89; Durham Farms #5, Ltd., Durham Farms #6, Ltd.,
Walter J. Hoyt III, Tax Matters Partner, docket No. 28133-89; Durham Farms #1,
Ltd., Durham Farms #2, Ltd., Durham Farms #3, Ltd., Durham Farms #4, Ltd.,
Durham Farms #5, Ltd., Durham Farms #6, Ltd., Walter J. Hoyt III, Tax Matters
Partner, docket No. 6211-90; Washoe Ranches #1, Ltd., Washoe Ranches #2, Ltd.,
Washoe Ranches #3, Ltd., Washoe Ranches #4, Ltd., Washoe Ranches #5, Ltd.,
Washoe Ranches #6, Ltd., Washoe Ranches #7, Ltd., Walter J. Hoyt III, Tax
Matters Partner, docket No. 6262-90; Florin Farms #1, Ltd., Florin Farms #2,
Ltd., Florin Farms #3, Ltd., Florin Farms #4, Ltd., Florin Farms #5, Ltd.,
Florin Farms #6, Ltd., Florin Farms #7, Ltd., Walter J. Hoyt III, Tax Matters
Partner, docket No. 7560-90.

22073-89,  26720-89,
27676-89,  27722-89,
28133-89,   6211-90,
 6262-90,   7560-90.


Walter J. Hoyt III, pro se.

Margaret Martin, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, Judge:  These consolidated cases were assigned to Special Trial Judge Stanley J. Goldberg pursuant to section 7443A(b)(4) and Rules 180, 181, and 183.[2]  The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

GOLDBERG, Special Trial Judge:  Respondent issued a notice of final partnership administrative adjustments to each limited partnership involved in these consolidated cases determining adjustments in the amounts and for the tax years as set forth in the Appendix hereto.

Walter J. Hoyt III (petitioner), the tax matters partner for each of the limited partnerships (partnerships) involved herein, filed a petition for redetermination of the partnership adjustments.  All issues, except one, have been settled by stipulation so that the only remaining issue to be decided is

---

[2]    Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

each limited partnership's correct amount of Schedule F income, if any, to be calculated in accordance with a settlement agreement (the agreement) dated May 20, 1993, entered into between Walter J. Hoyt III, and respondent's Sacramento, California, Appeals Office. At trial, respondent submitted a motion for entry of decision and a proposed decision document in each case that includes the Schedule F income. Petitioner objected to respondent's motion as stated. On the record respondent recharacterized her motion as a motion for summary judgment that was filed as such. If we decide that the agreement provides for the inclusion of Schedule F income, then the parties agree that the amount of Schedule F income reflected in each proposed decision document is correct, and that we may enter the proposed decision document in each case. However, if we decide that the agreement does not provide for Schedule F income, then we may enter a decision in each case minus the Schedule F income shown thereon.

These consolidated cases involved adjustments to partnership income of Washoe Ranches #1 through #7, Florin Farms #1 through #7, and Durham Farms #1 through #6 for taxable years ended December 31, 1983, 1984, 1985, and 1986. All the partnerships are limited partnerships formed to engage in the business of cattle breeding.

This Court has previously considered the tax consequences of the Hoyt family cattle breeding operations in Bales v.

Commissioner, T.C. Memo. 1989-568. The Bales case involved deficiencies in Federal income taxes of individual limited partners for the taxable years 1974 through 1980 who had invested in Florin Farms #1, #2, #3, #4, and #5, Durham Farms #1, #2, #3, and #4, and Washoe Ranches #1, #2, #3, #4, #5, and #6. As a result of our opinion in Bales v. Commissioner, supra, on May 20, 1993, Walter J. Hoyt III, the general partner and tax matters partner, entered into a settlement with respondent's Sacramento, California, Appeals Office, setting forth the basis of settling all Hoyt cattle partnership cases for the taxable years 1980 through 1986.

                          FINDINGS OF FACT

    Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated by this reference.

    The partnerships purchased the cattle used in their breeding operations from Hoyt & Sons Ranches (Ranches). In payment for the cattle purchased, the partnerships executed promissory notes payable to Ranches. During the taxable years in issue, they transferred cattle to Ranches in payment of principal and interest due on the notes. The parties introduced documentary evidence as to each of these transactions: Bills of sale from Ranches to the partnerships; promissory notes from them to Ranches; and bills of sale from them to Ranches.

The partnerships reported income recognized on the transfer of cattle to Ranches in payment of principal and interest as gain under section 1231.  Respondent adjusted this item to zero on the final partnership administrative adjustments issued to each partnership.

Pursuant to the settlement agreement, the numbers of cattle subject to depreciation by the partnerships for the taxable years in issue were reduced.  All cattle were subject to revised valuation as well.  As a result, the amounts of principal due on the notes payable to Ranches for the cattle purchased were reduced, and respondent recalculated the annual interest due based on these amounts according to the provisions of the settlement agreement.  Such interest was to be computed on an original principal balance of $4,000, the settled cost basis of the breeding cattle per head, times the number of cattle in service during the first year of each partnership.

The pertinent portions of the agreement provide:

> The primary purpose of this memorandum is to memorialize the bases we reached for settling all cases involving Hoyt Cattle partnerships for the years 1980 through 1986.  It is our express intent to apply the provisions specified in this memorandum to determine the tax effects on partnership transactions and operations.
>
> *     *     *     *     *     *     *
>
> Satisfaction of obligations for interest, principal payments and management fees by transferring calves and culled cows will constitute ordinary income to the investor partnerships.  This convention is consistent with the Tax Court's decision in Bales v. Commissioner, which provides that

-- calves are not section 1231(a) property; and

-- although culled cattle are section 1231(a) property, the gain on which may be long term capital gain (depending on the holding period), depreciation allowed must be recaptured as ordinary income under the provisions of section 1245.

Principal payments equal to 10% of the face amount of the notes payable to Ranches will begin according to terms of the notes -- in the sixth year of the partnership * * *

The agreement includes a provision listing "the total number of cattle in service and subject to depreciation by the investor partnerships" for each of the taxable years 1980 through 1986.

The Stipulation of Facts provides, in part:

15. All of the payments on the promissory notes made by the partnerships to Hoyt & Sons Ranches beginning in the sixth year after the respective notes were executed were paid by transferring cattle with a zero basis, rather than cash. * * *

16. The petitioners agree that all of the figures shown on the schedules (Joint Exhibits 372-NH) [a schedule of the interest and principal due for each of the years 1983 through 1986] are correct. The petitioners agree that all of the interest and principal payments beginning in the sixth year of the notes were made by the transfers of cattle rather than cash. * * *

The following terminology is used in the cattle business. Cattle are classified as calves from birth to weaning; heifer calves being female calves. After weaning, females are referred to as heifers or yearling heifers. A heifer that bears a calf is thereafter a cow. Culled cows are cows that are removed from the breeding herd because they are suffering performance problems, such as not producing milk or not breeding. Cows may be culled due to age.

OPINION

At trial, respondent filed a motion for summary judgment in these consolidated cases. Given the disposition of the issue on the merits as discussed below, we do not find it necessary to address respondent's motion for summary judgment, and it will be denied.

Under section 6224 a settlement agreement between respondent and a tax matters partner related to the determination of partnership items for any partnership taxable year is binding on the parties to the agreement with respect to the determination of partnership items for such partnership taxable year unless there is a showing of fraud, malfeasance, or misrepresentation of fact. Sec. 6224(c). Petitioner and respondent both assert that the agreement is clear and unambiguous, and neither party seeks to have it set aside. However, the parties do not agree on the proper interpretation and enforcement of the agreement.

Petitioner argues that the settlement memorandum was a complete integration of the agreement between petitioners and respondent and that respondent is precluded from relying on facts not contained therein. Petitioner argues that because the agreement limited the number of cattle subject to depreciation, the agreement failed to provide for the cattle necessary for the partnerships to make the payments of principal and interest to Hoyt & Sons Ranches by the transfer of cattle. Petitioner contends that the provision in the settlement agreement regarding

payments of principal on the notes must be read to include the intention to make such payments by the transfer of registered shorthorn heifers. Petitioner further contends that the "cattle" transferred in payment of the notes, as stipulated, were not calves or culled cattle but registered shorthorn heifers. Petitioner argues that the Bales decision and the agreement do not apply to the type of cattle transferred.

Respondent argues that the terms of the agreement are clear, limiting only the number of cattle subject to depreciation, not the total number of cattle. Because petitioner has stipulated that all principal and some interest payments on the notes were made by transferring cattle with a zero basis, respondent claims that these cattle would be nondepreciable or fully depreciated and not limited in number by the terms of the agreement. Respondent argues that the partnerships must recognize ordinary income in the amount of those payments by the terms of the agreement.

The settlement of tax cases is governed by general principles of contract law. A settlement agreement is in essence a contract. Each party agrees to concede some rights which he or she may assert against his or her adversary as consideration for those secured in the settlement agreement. Saigh v. Commissioner, 26 T.C. 171, 177 (1956). In determining the proper meaning of the terms of the agreement, we look to the language of the agreement and the circumstances surrounding its execution.

Robbins Tire Co. v. Commissioner, 52 T.C. 420, 435-436 (1969). Generally, extrinsic evidence will not be admitted to expand, vary, or explain the terms of a written agreement unless the agreement is ambiguous. Rink v. Commissioner, 100 T.C. 319, 325 (1993), affd. 47 F.3d 168 (6th Cir. 1995); Woods v. Commissioner, 92 T.C. 776, 780-781 (1989). Petitioner bears the burden of proving that his interpretation of any ambiguous contract language is correct. Rule 142(a); Rink v. Commissioner, supra at 326.

The settlement agreement provides that the partnerships must recognize ordinary income in the amount of any interest and principal payments made by the transfer of calves. In addition, they must recognize income on the transfer of any culled cattle in payment on the notes, and such income will be ordinary in character to the extent it represents depreciation recapture. The stipulations provide that the partnerships transferred cattle with a zero basis in payment on the notes in amounts stipulated. We interpret this to mean that they transferred calves, culled cattle, or some combination thereof, to Ranches in payment of interest and principal due on the notes. Thus we find that the agreement applies to this transaction. Because their bases in these cattle were zero, the partnerships must recognize ordinary income in a manner consistent with the decision in Bales v. Commissioner, supra, as provided in the agreement and stipulations. We believe that a reasonable person with knowledge

of the facts and circumstances surrounding the agreement would interpret the agreement and stipulations in this manner. Thus, we hold that the agreement provides for the inclusion of Schedule F income in the amounts shown in respondent's proposed decision documents.

Petitioner argues that this interpretation is inconsistent with the other terms of the agreement. An agreement should be interpreted as a whole, and any writings which are part of the same transaction should be interpreted together. 2 Restatement, Contracts 2d, sec. 202 (1981). "An interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless." Rink V. Commissioner, 47 F.3d 168, 171 (6th Cir. 1995), affg. 100 T.C. 319 (1993); 2 Restatement, Contracts 2d, sec. 202 (1981); 4 Williston on Contracts, sec. 618 (3d ed. 1961).

Petitioner argues that the agreement limits the total number and class of cattle held by the partnerships. The provision establishing the number of cattle held by the partnerships clearly applies, by its terms, only to depreciable cattle. Petitioner argues that we should infer from this language that no other cattle exist. We find this reading to be inconsistent with other provisions of the agreement.

For example, although not directly relevant to these cases, the agreement provides that cattle owned by the partnerships as of January 1, 1980, will be considered fully depreciated at the

end of 1981.  Thus the agreement provides that there are cattle that are no longer subject to depreciation.

In addition, as set out above, the agreement provides that payments made by the partnerships to Ranches by transfer of calves or culled cows will constitute ordinary income in a manner consistent with the decision in Bales v. Commissioner.  In that case the Court stated that dispositions of breeding cattle, including culled cows, are taxed pursuant to section 1231(a) subject to the recapture provisions of section 1245.  The Court further stated calves that are used for payment on the notes are not held for breeding purposes and are not accorded section 1231 treatment.  Bales v. Commissioner, T.C. Memo. 1989-568.  Such calves would not be subject to an allowance for depreciation and thus would not be subject to the limitation on depreciable cattle set forth above.  Cf. sec. 1.167(a)-6(b), Income Tax Regs.  If petitioner's reading were accepted, this provision concerning calves would be rendered meaningless.

We note that the agreement is not completely clear in all of its terms.  In part, the agreement provides:  "For Federal income tax purposes, all the cattle are adult breeding cattle, each having an original depreciable basis of $4,000."  We do not think this provision is clear and unambiguous because it could be read on its own to limit the type of cattle held by the partnerships.  However, we interpret this paragraph as qualifying the one directly preceding it which limits the number of cattle subject

to depreciation for each year, and neither party has suggested a different interpretation. After considering these provisions and the agreement as a whole, we reject petitioner's argument that the provision limiting the number of depreciable cattle should be read to limit the total number of cattle held by the partnerships.

Even if we found the agreement ambiguous as to this provision, petitioner has offered no extrinsic evidence that supports his position. We find that the agreement limited the number of cattle subject to depreciation only but did not limit the number of non-depreciable cattle owned by the partnerships.

Petitioner further argues that the portion of the agreement that provides that principal payments will begin in the sixth year of the partnership should be enforced by concluding that such payments are to be made by the transfer of registered shorthorn heifers. The language of the agreement is silent as to the method of payment.

Petitioner's proffered evidence, when considered in light of general contract principles, does not convince us that his interpretation is correct. When the Court asked petitioner if he assumed or intended that the provision meant that payment would be made by the transfer of registered shorthorn heifers, he responded "I wouldn't characterize it that way". He testified that he did not designate, in the provision, the class of cattle with which payment was to be made because he was focusing on

trying to draft a document for the basis of settlement. We find that, although the agreement does not provide a specific method of payment on the notes, the parties have stipulated that the payments were made by the transfer of cattle.

Ordinarily, a stipulation of fact is binding on the parties, and the Court is constrained to enforce it. Rule 91. The Court will not permit a party to a stipulation to qualify, change, or contradict the stipulation except where justice requires. Rule 91(e). The interpretation of a stipulation is determined primarily by ascertaining the intent of the parties by applying rules of contract law. Stamos v. Commissioner, 87 T.C. 1451, 1455 (1986).

As we understand petitioner's argument, he claims that the "cattle" transferred in payment on the notes as stipulated were not culled cows or calves but were registered shorthorn heifers and, therefore, not covered by the agreement. Petitioner argues that there is no gain to be recognized from the transfers because the Bales decision does not apply to this class of cattle. We disagree.

Petitioner has stipulated that the cattle transferred had a zero basis. Thus the transfers result in ordinary income to the partnerships regardless of whether the cattle are heifers or culled cows and calves. A stipulation may be set aside where it is clearly contrary to the facts disclosed on the record. Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989). The

evidence offered by petitioner consists of bills of sale from the partnerships to the Ranches corresponding to the cattle that petitioner claims were transferred in payment on the notes. The bills refer to the cattle as "registered shorthorn heifers". The bills of sale do not indicate the partnerships' basis in any of the cattle. The facts in this record do not show that the partnerships made payment on the notes with cattle other than those with a zero basis as stipulated. Accordingly, they must recognize gain in the amounts of the payments of interest and principal on the notes.

Petitioner's argument concerning the terms of the agreement and stipulation is not entirely clear, and we will briefly address the alternate argument we think he may be attempting to make. The argument can be summarized as follows. The agreement sets out the number of cattle subject to depreciation on an annual basis. As stated in the petition, the partnerships sold registered shorthorn heifers that had been held for breeding purposes for over 24 months in payment of the notes. These cattle would be depreciable. Because the number of cattle subject to depreciation does not decrease in correlation to the cattle transferred in payment on the notes, the agreement does not provide the partnerships with sufficient cattle to make such payments. Therefore, the payments could not have been made under the binding terms of the agreement.

- 15 -

We are not persuaded by this argument. Even if the cattle transferred were depreciable registered shorthorn heifers, petitioner has stipulated that the cattle had zero basis, and as explained above, we will not set aside this stipulation. Therefore, the cattle would be fully depreciated and outside of the provision limiting the number of cattle held subject to depreciation.

In the alternative, petitioner argues that because respondent calculated lower interest payable by the partnerships for the years in issue consistent with the agreement, in some of the years they paid cash to Hoyt & Sons Ranches in excess of the amounts due. This cash, petitioner asserts, should be applied to any future principal and interest due on the notes payable to Hoyt & Sons Ranches before the partnerships recognize any ordinary income on the transfer of cattle in payment.

Respondent argues that the stipulation clearly negates any claim that the partnerships made payments on the notes with cash, and that they are bound by the stipulation.

The Court will hold the parties bound by a stipulation unless justice requires otherwise. Rule 91(e). The Court may modify or set aside a stipulation which is clearly contrary to the facts revealed on the record. Cal-Maine Foods v. Commissioner, supra.

Petitioner attached schedules entitled "Partnerships Cash Reconciliation" to petitioner's posttrial brief for each of the

years 1980 through 1986.  This exhibit is not considered to be evidence.  Rule 143(b).  Petitioner also argues that the stipulations entered in another case are evidence in support of his position.  Stipulations have effect in the cases only in which they are entered and are not binding for any other purpose.  Rule 91(e).  Therefore, the stipulations from the other cases are not evidence in these cases.

Petitioner has offered no other evidence to show that any cash was paid to Hoyt & Sons Ranches.  The only evidence introduced by petitioner are the bills of sale detailing the number of cattle transferred as payment on the notes.  Moreover, petitioner stipulated that the payments at issue were made by transferring cattle, not cash.  This stipulation is not clearly contrary to the facts disclosed on the record.  Therefore, we find that the partnerships made interest and principal payments beginning in the sixth year of the notes payable by transferring cattle.  They must recognize ordinary income on the transfer of cattle in the amounts stipulated.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered in each case</u>.

APPENDIX

| Docket No. | Partnership | Taxable Year Ending | Investment Tax Credit | Adjustments Ordinary Income | Adjustments Separately Stated Partnership Items |
|---|---|---|---|---|---|
| 8916-89 | Washoe Ranches #1, LTD. | 11-30-85 | $11,895 | $218,117 | $485,223 |
| | " " | 12-31-85 | 11,895 | 218,117 | 485,223 |
| | Washoe Ranches #2, LTD. | 11-30-85 | 11,896 | 79,469 | 265,669 |
| | " " | 12-31-85 | 11,896 | 79,469 | 265,669 |
| | Washoe Ranches #3, LTD. | 11-30-85 | 11,895 | 91,326 | 240,251 |
| | " " | 12-31-85 | 11,895 | 91,326 | 240,251 |
| | Washoe Ranches #4, LTD. | 11-30-85 | 11,896 | 158,182 | 369,043 |
| | " " | 12-31-85 | 11,896 | 158,182 | 369,043 |
| | Washoe Ranches #5, LTD. | 11-30-85 | 11,895 | 219,965 | 335,823 |
| | " " | 12-31-85 | 11,895 | 219,965 | 335,823 |
| | Washoe Ranches #6, LTD. | 11-30-85 | 11,896 | 150,593 | 276,179 |
| | " " | 12-31-85 | 11,896 | 150,593 | 276,179 |
| | Washoe Ranches #7, LTD. | 11-30-85 | 11,895 | 153,792 | 431,917 |
| | " " | 12-31-85 | 11,895 | 153,792 | 431,917 |
| 8935-89 | Florin Farms #1, LTD. | 11-30-85 | 11,896 | 24,672 | 155,143 |
| | " " | 12-31-85 | 11,896 | 24,672 | 155,143 |
| | Florin Farms #2, LTD. | 11-30-85 | 11,896 | 41,535 | 206,428 |
| | " " | 11-30-85 | 11,896 | 41,535 | 206,428 |
| | Florin Farms #3, LTD. | 11-30-85 | 11,896 | 2,216 | 310,697 |
| | " " | 12-31-85 | 11,896 | 2,216 | 310,697 |
| | Florin Farms #4, LTD. | 11-30-85 | 11,895 | 13,703 | 148,332 |
| | " " | 12-31-85 | 11,895 | 13,703 | 148,332 |
| | Florin Farms #5, LTD. | 11-30-85 | 11,896 | 12,586 | 167,561 |
| | " " | 12-31-85 | 11,896 | 12,586 | 167,561 |
| | Florin Farms #6, LTD. | 11-30-85 | 11,895 | 15,753 | 156,301 |
| | " " | 12-31-85 | 11,895 | 15,753 | 156,301 |
| | Florin Farms #7, LTD. | 11-30-85 | 11,896 | 604,325 | 503,400 |
| | " " | 12-31-85 | 11,896 | 604,325 | 503,400 |
| 8936-89 | Durham Farms #1, LTD. | 11-30-85 | 11,896 | 72,790 | 210,319 |
| | " " | 12-31-85 | 11,896 | 72,790 | 210,319 |
| | Durham Farms #2, LTD. | 11-30-85 | 11,896 | 71,840 | 256,102 |
| | " " | 12-31-85 | 11,896 | 71,840 | 256,102 |
| | Durham Farms #3, LTD. | 11-30-85 | 11,896 | 57,423 | 217,567 |
| | " " | 12-31-85 | 11,896 | 57,423 | 217,567 |
| | Durham Farms #4, LTD. | 11-30-85 | 11,896 | 164,953 | 258,611 |
| | " " | 12-31-85 | 11,896 | 164,953 | 258,611 |
| | Durham Farms #5, LTD. | 11-30-85 | 11,896 | 324,464 | 333,433 |
| | " " | 12-31-85 | 11,896 | 324,464 | 333,433 |
| | Durham Farms #6, LTD. | 11-30-85 | 11,896 | 299,310 | 374,454 |
| | " " | 12-31-85 | 11,896 | 299,310 | 374,454 |
| 21998-89 | Florin Farms #1, LTD. | 12-31-83 | -0- | 41,066 | 96,375 |
| | Florin Farms #2, LTD. | 12-31-83 | -0- | 62,162 | 94,525 |
| | Florin Farms #3, LTD. | 12-31-83 | -0- | 34,722 | 54,000 |
| | Florin Farms #4, LTD. | 12-31-83 | -0- | 50,507 | 101,275 |
| | Florin Farms #5, LTD. | 12-31-83 | -0- | 54,115 | 94,250 |

| | | | | |
|---|---|---|---|---|
| Florin Farms #6, LTD. | 12-31-83 | -0- | 30,326 | 87,675 |
| Florin Farms #7, LTD. | 12-31-83 | -0- | 562,528 | 10,675 |

| Docket No. | Partnership | Taxable Year Ending | Adjustments Ordinary Income | Separately Stated Partnership Items |
|---|---|---|---|---|
| 21999-89 | Florin Farms #1, LTD. | 12-31-84 | $ 22,470 | $ 94,808 |
| | Florin Farms #2, LTD. | 12-31-84 | 46,564 | 91,981 |
| | Florin Farms #3, LTD. | 12-31-84 | (39,154) | 140,692 |
| | Florin Farms #4, LTD. | 12-31-84 | 15,831 | 60,286 |
| | Florin Farms #5, LTD. | 12-31-84 | 23,903 | 77,635 |
| | Florin Farms #6, LTD. | 12-31-84 | 15,919 | 66,991 |
| | Florin Farms #7, LTD. | 12-31-84 | 432,052 | 8,000 |
| 22000-89 | Durham Farms #1, LTD. | 12-31-84 | 59,778 | 85,040 |
| | Durham Farms #2, LTD. | 12-31-84 | 93,680 | 136,399 |
| | Durham Farms #3, LTD. | 12-31-84 | 63,647 | 125,996 |
| | Durham Farms #4, LTD. | 12-31-84 | 84,268 | 114,775 |
| 22073-89 | Durham Farms #1, LTD. | 12-31-83 | 77,738 | 85,550 |
| | Durham Farms #2, LTD. | 12-31-83 | 109,898 | 126,000 |
| | Durham Farms #3, LTD. | 12-31-83 | 85,221 | 147,900 |
| | Durham Farms #4, LTD. | 12-31-83 | 109,583 | 116,500 |
| 26720-89 | Washoe Ranches #6, LTD. | 12-31-83 | 83,708 | 107,350 |
| | " " | 12-31-84 | 96,188 | 123,607 |
| | Washoe Ranches #7, LTD. | 12-31-83 | 189,260 | 26,400 |
| | " " | 12-31-84 | 194,713 | 188,129 |
| 27676-89 | Washoe Ranches #1, LTD. | 12-31-83 | 118,644 | 136,775 |
| | Washoe Ranches #2, LTD. | 12-31-83 | 89,656 | 121,325 |
| | Washoe Ranches #3, LTD. | 12-31-83 | 78,042 | 90,000 |
| | Washoe Ranches #4, LTD. | 12-31-83 | 87,796 | 98,650 |
| | Washoe Ranches #5, LTD. | 12-31-83 | 121,442 | 134,800 |
| 27722-89 | Washoe Ranches #1, LTD. | 12-31-84 | 110,643 | 192,741 |
| | Washoe Ranches #2, LTD. | 12-31-84 | 64,645 | 128,443 |
| | Washoe Ranches #3, LTD. | 12-31-84 | 57,014 | 81,229 |
| | Washoe Ranches #4, LTD. | 12-31-84 | 95,266 | 117,172 |
| | Washoe Ranches #5, LTD. | 12-31-84 | 120,407 | 162,146 |
| 28133-89 | Durham Farms #5, LTD. | 12-31-83 | 178,507 | 15,325 |
| | " " | 12-31-84 | 130,863 | 6,000 |
| | Durham Farms #6, LTD. | 12-31-83 | 182,368 | 6,400 |
| | " " | 12-31-84 | 361,380 | 8,000 |
| 6211-90 | Durham Farms #1, LTD. | 11-30-86 | 39,084 | (105,470) |
| | " " | 12-31-86 | 39,084 | (105,470) |
| | Durham Farms #2, LTD. | 11-30-86 | 46,061 | (96,471) |
| | " " | 12-31-86 | 46,061 | (96,471) |
| | Durham Farms #3, LTD. | 11-30-86 | 35,631 | (95,200) |
| | " " | 12-31-86 | 35,631 | (95,200) |
| | Durham Farms #4, LTD. | 11-30-86 | 38,509 | (101,462) |
| | " " | 12-31-86 | 38,509 | (101,462) |
| | Durham Farms #5, LTD. | 11-30-86 | 62,074 | (109,353) |
| | " " | 12-31-86 | 62,074 | (109,353) |
| | Durham Farms #6, LTD. | 11-30-86 | 136,207 | (92,606) |
| | " " | 12-31-86 | 136,207 | (92,606) |

| Docket No. | Partnership | Taxable Year Ending | Adjustments | |
|---|---|---|---|---|
| | | | Ordinary Income | Separately Stated Partnership Items |
| 6262-90 | Washoe Ranches #1, LTD. | 11-30-86 | $66,803 | $(129,819) |
| | "            " | 12-31-86 | 66,803 | (129,819) |
| | Washoe Ranches #2, LTD. | 11-30-86 | 55,302 | (86,000) |
| | "            " | 12-31-86 | 55,302 | (86,000) |
| | Washoe Ranches #3, LTD. | 11-30-86 | 47,599 | (80,387) |
| | "            " | 12-31-86 | 47,599 | (80,387) |
| | Washoe Ranches #4, LTD. | 11-30-86 | 79,117 | (128,373) |
| | "            " | 12-31-86 | 79,117 | (128,373) |
| | Washoe Ranches #5, LTD. | 11-30-86 | 99,665 | (142,173) |
| | "            " | 12-31-86 | 99,665 | (142,173) |
| | Washoe Ranches #6, LTD. | 11-30-86 | 53,692 | (101,875) |
| | "            " | 12-31-86 | 53,692 | (101,875) |
| | Washoe Ranches #7, LTD. | 11-30-86 | 71,240 | (133,965) |
| | "            " | 12-31-86 | 71,240 | (133,965) |
| 7560-90 | Florin Farms #1, LTD. | 11-30-86 | 14,491 | (65,521) |
| | "            " | 12-31-86 | 14,491 | (65,521) |
| | Florin Farms #2, LTD. | 11-30-86 | 39,052 | (79,058) |
| | "            " | 12-31-86 | 39,052 | (79,058) |
| | Florin Farms #3, LTD. | 11-30-86 | 1,463 | -0- |
| | "            " | 12-31-86 | 1,463 | -0- |
| | Florin Farms #4, LTD. | 11-30-86 | (136,597) | (190,926) |
| | "            " | 12-31-86 | (136,597) | (190,926) |
| | Florin Farms #5, LTD. | 11-30-86 | 17,824 | (67,966) |
| | "            " | 12-31-86 | 17,824 | (67,966) |
| | Florin Farms #6, LTD. | 11-30-86 | 13,139 | (54,827) |
| | "            " | 12-31-86 | 13,139 | (54,827) |
| | Florin Farms #7, LTD. | 11-30-86 | 327,127 | (147,715) |
| | "            " | 12-31-86 | 327,127 | (147,715) |